784 So.2d 1008 (2001)
Michael AINSWORTH, Appellant,
v.
CAPFORM, INC., Appellee.
No. 2000-CA-00043-COA.
Court of Appeals of Mississippi.
May 8, 2001.
*1009 Mark W. Davis, Abigail Susannah Marshall, Attorneys for Appellant.
Craig Robert Sessums, Jackson, Attorney for Appellee.
BEFORE KING, P.J., PAYNE, and IRVING, JJ.
IRVING, J., for the Court:
¶ 1. Ainsworth, who was injured when he tripped over a piece of rebar at the construction site of the Beau Rivage Hotel and Casino, filed a complaint against Capform in which he alleged (1) that Capform was negligent in failing to adequately mark the rebar so as to make persons on the premises aware of the rebar and in failing to warn invitees of the dangerous nature and condition of the unmarked rebar, and (2) that the actual condition was caused by Capform or by some employee or agent under Capform's supervision. Ainsworth sought both compensatory and punitive damages. The Circuit Court of Rankin County granted summary judgment in favor of Capform, Inc. Ainsworth, feeling aggrieved, has appealed and has assigned the following issues for review: (1) whether the trial court erred in its determination that there is insufficient evidence in the record upon which a jury could conclude by a preponderance of the evidence that Capform owed a duty to Ainsworth, and (2) whether, assuming a duty was owed, the trial court erred in its determination that there is insufficient evidence in the record upon which a jury could conclude by a preponderance of evidence that Capform breached its duty to Ainsworth. After careful consideration of these issues presented, we reverse and remand for a full trial on the merits.

FACTS
¶ 2. W.G. Yates and Sons Construction was under contract to construct the Beau Rivage Hotel and Casino in Biloxi, Mississippi. Yates subcontracted the concrete work to Capform, Inc. Midwest Drywall was also one of Yates's subcontractors on the project, and Michael Ainsworth was an employee of Midwest Drywall. As stated, Ainsworth tripped over rebar that was sticking up about an inch out of the ground at the job site. As a result, he cut his left foot and injured his lower back. No one had discovered the piece of rebar prior to Ainsworth's fall because it was almost completely submerged below the ground. As stated, Ainsworth filed a complaint against Capform in which he alleged (1) that Capform was negligent in failing to adequately mark the rebar so as to make persons on the premises aware of the rebar and in failing to warn invitees of the dangerous nature and condition of the unmarked rebar, and (2) that the actual condition was caused by Capform or by some employee or agent under Capform's supervision.
¶ 3. We were not favored with a complete copy of Ainsworth's deposition. Both Capform and Ainsworth submitted portions of the deposition in support of their respective positions. In the portions that *1010 were furnished, Ainsworth testified that the rebar he tripped on was in the walkway and that there were other pieces of rebar sticking out of the ground in the walkway. When asked if he knew who put the rebar in the ground, he said it was Capform. He was then asked if he saw anybody from Capform put it there, and he answered, "I actually saw them take all the stuff from the 14th floor, crane it downthey were pilingthey were piling the debris up becauseyes. They were piling the debris up." Ainsworth further testified that at construction sites it is a common practice to cap or place a red ribbon or orange paint on anything sticking out of the ground.
¶ 4. In his response to Capform's motion for summary judgment, Ainsworth submitted an affidavit and additional portions of his deposition. This is part of what he said in the affidavit:
A day before the accident, I witnessed Capform employees using a "T" crane to lower numerous loads of rebar, including scrap rebar, from the 14th floor of the hotel to the area where I later tripped and fell. While the rebar was being lowered from the 14th floor to the ground below, no one was allowed in the area. Prior to Capform lowering the numerous loads of rebar into the areas, I had walked along the pathway on at least two dozen occasions and did not see any rebar in the area where I later tripped and fell.
On the date of the accident, there were still piles of scrap rebar in the general area where I tripped and fell. These piles of scrap rebar were left in the area by Capform. There was a pathway where workers could walk through the areas. As I was walking along this pathway, I tripped on a piece of rebar that was sticking out of the ground. About one inch of the rebar was sticking out of the ground.

ISSUES PRESENTED FOR ANALYSIS

Standard of Review
¶ 5. Upon review of the grant of summary judgment by a trial court, this Court employs a de novo standard of review. Travis v. Stewart, 680 So.2d 214, 216 (Miss.1996). After viewing evidentiary matters in a light most favorable to the nonmoving party, this Court can only reverse the decision of the trial court if triable issues of fact exist. Id.

I. Capform's Duty to Ainsworth
¶ 6. In his pleadings, it appears at first blush that Ainsworth confused the theory of recovery that he was traveling under. The "failing to warn invitees" language is more apt to an action against a prime contractor for failing to provide a reasonably safe working environment for his subcontractors and the subcontractors' employees, or to an action against an owner for failing to provide a reasonably safe working place for his business invitees. But a closer reading of the complaint indicates that Ainsworth did allege a proper theory of recovery against Capform.
¶ 7. Under Mississippi law, the general rule is that a general contractor on a construction site is in control of the premises and is burdened with the duty to use ordinary reasonable care to provide a safe place for employees of a subcontractor to work. Oden Const. Co., v. McPhail, 228 So.2d 586, 588 (Miss.1969). Additionally, the general contractor also has a duty to oversee the conditions in the work of each subcontractor so far as they affect the safety of the employees of other contractors. Id.
*1011 ¶ 8. Here, W.G. Yates and Sons Construction was the general contractor of the Beau Rivage Hotel and Casino construction project, not Capform, Inc. As stated, Capform was a subcontractor. The supreme court has defined a subcontractor as one who enters a contract with the principal contractor to perform all or part of the services which the primary contractor agreed to. Amoco Prod. Co. v. Murphy, 528 So.2d 1123 (Miss.1988). As the general contractor, Yates was charged with a duty to provide a safe workplace. Mississippi Power Co. v. Brooks, 309 So.2d 863, 866 (Miss.1975).
¶ 9. However, the fact that Yates, as the prime contractor, was required to provide a safe working environment for Ainsworth, an employee of subcontractor Midwest Drywall, does not absolve subcontractor Capform from liability for its own acts of negligence that cause harm or injury to employees of other subcontractors.
¶ 10. We should reiterate here that Midwest Drywall, Ainsworth's employer, was not a subcontractor of Capform. If Midwest Drywall had been a subcontractor of Capform, Ainsworth's claim against Capform would be barred by the exclusivity provision of the Workers' Compensation Act, assuming the proper workers' compensation coverage had been in place. No issue is made in this regard by the parties; therefore, we will not address it further. It is sufficient to say that if Ainsworth can establish (1) that Capform was responsible for the rebar being where it was, (2) that the pieces of rebar jutting from the ground posed a hazard to persons using the walkway, and (3) that Capform failed to mark or to otherwise take precautions to call the inconspicuous pieces of jutting rebar to the attention of persons using the walkway, he can recover from Capform for the injury that he suffered.
¶ 11. The trial court correctly concluded that in order for Ainsworth to prevail, Ainsworth was required to prove that a duty was owed to him by Capform, that Capform breached that duty, and that Ainsworth suffered harm that was proximately caused by Capform's breach of duty. The trial court then concluded, however, that Ainsworth failed to meet his burden of proof. For reasons that we explain below, we believe the trial court erred in this latter conclusion.
¶ 12. In concluding that Ainsworth failed to meet his burden of proof, the trial court made the following findings:
It was established through Ainsworth's deposition testimony that Ainsworth did not see the piece of rebar prior to the fall. Ainsworth further testified that he did not see any employee of Capform, Inc. place the rebar in the ground and does not know how the rebar ended up in the ground. He testified that had Capform sent someone to check the area where he fell prior to the fall, they would have been unable to locate the piece of rebar because it was submerged in the ground. Ainsworth knows of no one who had any knowledge of the piece of rebar. Ainsworth himself had traveled this path at least 30 times over a two day period and had never discovered the rebar or had any problem with the rebar. Ainsworth testified that W.G. Yates and Sons Construction was responsible for safety on the site and that it was Yates' responsibility to mark rebar.
¶ 13. Our review of the record establishes that Ainsworth did indeed testify by deposition essentially to the facts recited in the trial judge's order granting summary judgment, but that is only part of the evidence that was offered. As stated in our recitation of facts, Ainsworth also testified that Capform placed the rebar in the *1012 walkway where he tripped and that the particular piece of rebar, as well as other rebar, was sticking out of the ground. In his affidavit, he alleged that the rebar was protruding about an inch out of the ground. He further alleged that he witnessed Capform employees using a "T" crane to lower numerous loads of rebar, including scrap rebar, from the 14th floor of the hotel to the area where he later tripped and fell. This is substantially more than what the trial judge took note of. In our opinion, this additional testimony, along with Ainsworth's affidavit creates a material issue of fact as to whether Capform was negligent. Therefore, we conclude that the trial judge erred in granting summary judgment on Ainsworth's negligence claim against Capform. However, we affirm the grant of summary judgment on the issue of punitive damages as we can see no set of facts which would entitle Ainsworth to punitive damages against Capform.
¶ 14. The dissent takes issue with our conclusion that a fact issue was presented as to Capform's liability for the protruding piece of rebar. The dissent finds support in the fact that the piece of rebar was buried at least eighteen inches in the ground with only a small piece sticking out. Whether the particular piece of rebar was embedded in the ground as a result of Capform's dumping piles of scrap rebar from the fourteenth floor of the hotel would depend on the angle of the particular piece of rebar as it was propelled to the ground as well as the weight of other pieces of rebar against it. We understand and appreciate the concern raised by the dissent; however, we cannot say that it was impossible for the piece of scrap rebar to have been imbedded in the ground as a result of being dumped from a height of fourteen stories. Only a jury can make that determination.

II. Capform's Breach of Duty
¶ 15. Our resolution of the first issue necessarily resolves this issue. Therefore, there is no need to address this issue any further. It is sufficient to say that on remand, Ainsworth shall be allowed to offer all relevant evidence consistent with the proof as to his theory of recovery. We remand this case for further proceedings consistent with this opinion.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE IS REVERSED AND THE CASE IS REMANDED FOR A FULL TRIAL ON THE MERITS. THE COSTS OF THIS APPEAL ARE TAXED TO APPELLEE.
KING, P.J., PAYNE, BRIDGES, THOMAS, MYERS and CHANDLER, JJ., CONCUR. LEE, J., CONCURS IN RESULT ONLY. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J.
SOUTHWICK, P.J., Dissenting
¶ 17. With respect for the careful analysis of the majority, I nonetheless find myself in disagreement. I find no dispute of material fact and would affirm.
¶ 18. The majority agrees with the trial judge that some evidence of negligence on the part of Capform had to be shown. There was a submerged piece of rebar steel on which Ainsworth tripped. According to the plaintiff's deposition, just a small piece stuck up above the ground. He later dug down at least a foot and a half and still was unable to pull up the rod, meaning a substantial length of it was still buried. Thus this was a well-buried piece of rebar.
*1013 ¶ 19. A fact question about Capform's liability for the presence of that rebar rod is said to arise from the fact that two or three days before the accident, Ainsworth saw employees from Capform using a crane to lower rebar from the top floor of the hotel that was being constructed.
¶ 20. Where I fail to see a fact issue is that if Capform's liability is premised on the fact that its employees were lowering rebar with a crane a few days earlier, what evidence is there that the buried rebar was one of those pieces? Based on the evidence in the record, it appears quite unlikely that it was the same material. Even if there was a possibility, it would be rank speculation for a fact-finder actually to conclude that the rebar on which Ainsworth tripped, buried well over eighteen inches in the ground, was one of the pieces that had been lowered from the roof with a crane only a few days earlier. There was no explanation as to why that rebar removed from the roof would be buried deeply in the ground.
¶ 21. What the evidence also showed is that there was rebar all over the construction site. A hurricane had shut down construction until only two or three days before the injury. The jobsite "was a mess, it really was," Ainsworth stated. That there were well-buried construction materials as a result of the hurricane or previous dirt work on the site are far more rational explanations for the burial of this particular rod than any action by Capform.
¶ 22. By the time of summary judgment the plaintiff had to present evidence of a legitimate factual basis on which liability could be imposed. Only speculation, and rather unreasonable speculation at that, supported Capform's potential responsibility for the injury. The trial court properly granted judgment.
McMILLIN, C.J., joins this separate opinion.