MYERS, P.J., for the Court.
 

 ¶ 1. Barry Logan filed suit in the Oktib-beha County Circuit Court against Overly Electric Co. (Overly) and Lloyd G. Oli-phant & Sons Paint Co., Inc. (Oliphant) alleging their negligence caused him to fall down a unlit stairwell on a construction site. Both defendants moved for summary judgment. The trial court granted full summary judgment to Overly and partial summary judgment to Oliphant only on the issue of punitive damages. Logan now appeals the trial court’s grant of summary judgment to Overly, while Oliphant appeals the trial court’s denial of summary judgment to it on the issue of negligence. Finding error, we reverse and remand.
 

 
 *616
 
 FACTS AND PROCEDURAL HISTORY
 

 ¶2. Logan was employed by Jody Plumbing and Mechanical (Jody). Jody was one of several subcontractors working on the renovation of the Cresswell dormitory on the campus of Mississippi State University.
 
 [1]
 
 Overly was the electrical subcontractor; Oliphant was the painting subcontractor for this renovation. Cresswell is a five-story dormitory. It has three stairwells — two on the outside and one in the interior of the building. The two outside stairwells were lit by natural light; the interior stairwell was lit by artificial lighting.
 

 ¶ 3. On May 20, 2002, at approximately 12:80 p.m., Logan entered the interior stairwell. He was returning to the outside of the building from the third floor. He testified that the artificial lighting in the interior stairwell was out that day.
 
 [2]
 
 He stated that the interior stairwell was so dark “that you could not see your hand in front of your face.” His description of the lighting in the stairwell was corroborated by another construction worker on the job site. While descending the stairwell, Logan reached the platform between the first and second floors, where he allegedly stepped on a piece of conduit, causing him to fall down the remaining stairs. He was knocked unconscious. Logan’s unconscious body was later discovered when another worker stepped on him.
 

 ¶ 4. Logan testified that the fall caused him several injuries requiring surgeries, and the effects have ultimately altered his lifestyle. Logan filed suit against Overly and Oliphant arguing that their negligence caused his accident. In particular, Logan argues that Overly was negligent when: (1) it failed to properly light the interior stairwell by removing or disconnecting the artificial lighting, and (2) one of its employees left a piece of conduit in the stairwell that Logan slipped on causing him to fall. Logan contends that Oliphant was negligent when one of its employees left a piece of conduit in the stairwell that Logan slipped on causing him to fall, and it was negligent when its employees removed the lighting from the stairwell;
 
 [3]
 

 ¶ 5. After discovery, Overly and Oliphant filed separate motions for summary judgment. In its motion, Overly argued that Logan’s claims were based on conjecture and speculation; Logan had no proof that Overly removed or disconnected the lighting or that Overly knew the lighting was off in the interior stairwell. Oliphant’s argument was very similar; Logan produced no evidence that an Oliphant employee left the item in the stairwell that caused him to fall. After considering each party’s argument, the trial court issued two summary judgment orders: one granting full summary judgment for Overly, and the other granting partial summary judgment for Oliphant on the issue of punitive damages, but denying its motion on the issue of negligence. Aggrieved, Logan appeals the trial court’s grant of summary judgment for Overly, and Oliphant appeals the trial court’s denial of summary judgment to it on the issue of negligence.
 

 STANDARD OF REVIEW
 

 ¶ 6. We review the trial court’s grant of a motion for summary judgment under a
 
 *617
 
 de novo standard.
 
 Pride Oil Co. v. Tommy Brooks Oil Co.,
 
 761 So.2d 187, 190(¶ 9) (Miss.2000). “The moving party has the burden of demonstrating that no genuine issue of material fact exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact.”
 
 Hosey v. Mediamolle,
 
 963 So.2d 1267, 1269(¶ 3) (Miss.Ct.App.2007) (citation omitted). Issues of fact are present when one party swears to one version of the matter and another says the opposite.
 
 Cook v. Children’s Med. Group,
 
 756 So.2d 734, 739(¶ 15) (Miss.1999). “Where there is the slightest doubt over whether a factual issue exists, the court should resolve [the questions] in favor of the non-moving party.”
 
 Rein v. Benchmark Constr. Co.,
 
 865 So.2d 1134, 1142(¶ 25) (Miss.2004) (citing
 
 Cothern v. Vickers, Inc.,
 
 759 So.2d 1241, 1245(¶6) (Miss.2000)). “[T]his Court must review all the eviden-tiary material before it in a light most favorable to the party against whom the motion was granted.”
 
 Dominquez v. Palmer,
 
 970 So.2d 737, 739(¶ 10) (Miss.Ct.App.2007) (citing
 
 Pride Oil Co.,
 
 761 So.2d at 190(¶ 9)). “Motions for summary judgment are to be viewed with a skeptical eye, and if the trial court should err, it is better to err on the side of denying the motion.”
 
 PDN, Inc. v. Loring,
 
 843 So.2d 685, 688(¶ 8) (Miss.2003).
 

 WHETHER THE TRIAL COURT ERRED IN ITS SUMMARY JUDGMENT RULINGS
 

 ¶ 7. These two appeals were consolidated into one because they stem from the same facts and complaint. However, we will discuss each appeal separately.
 

 A. Oliphant’s appeal
 

 ¶ 8. Oliphant moved for summary judgment arguing that Logan had failed to provide sufficient proof that the item Logan slipped on was negligently left by an Oliphant employee. The trial court did not agree with Oliphant’s contention and denied its summary judgment motion. However, the trial court did grant partial summary judgment on Oliphant’s request that it not be assessed punitive damages.
 

 ¶ 9. As neither party raised this issue on appeal, we will address whether the trial court’s order is appealable on our own initiative.
 
 See Gilchrist v. Veach,
 
 754 So.2d 1172, 1173(¶ 5) (Miss.2000). “A partial summary judgment is not a final ap-pealable order unless the trial court certifies the judgment as final under Rule 54(b)
 
 [4]
 
 of the Mississippi Rules of Civil Procedure or the supreme court grants permission for an interlocutory appeal under Rule 5 of the Mississippi Rules of Appellate Procedure.”
 
 In re Estate of Thomas v. Wilson,
 
 962 So.2d 141, 144(¶ 11) (Miss.Ct.App.2007).
 

 ¶ 10. Logan commenced the present action against Overly and Oliphant alleging
 
 *618
 
 that each company’s negligence caused his fall. Thereafter, both defendants moved for summary judgment. Pursuant to these motions, the trial court granted full summary judgment to Overly and only partial summary judgment to Oliphant on the issue of punitive damages. The issue of Oliphant’s negligence still remains to be adjudicated by the trial court. There is neither a Rule 54(b) certification in the record with regard to Oliphant, nor is there a petition for an interlocutory appeal. Therefore, we find that the order is not appealable as a final judgment, and we must dismiss for lack of jurisdiction.
 

 B. Logan’s appeal
 

 ¶ 11. Logan appeals the trial court’s order granting summary judgment to Overly. Overly petitioned for summary judgment arguing that Logan’s negligence claim against it is pure speculation. Overly argued in its motion, and again on appeal, that Logan provided no proof that Overly actually removed or disconnected the lighting and that Logan provided no proof that Overly knew the temporary lighting was removed or disconnected. Based on these contentions, the trial court granted Overly’s motion for summary judgment.
 

 ¶ 12. “As with any negligence case, a plaintiff must prove: ‘(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) damages; and (4) a causal connection between the breach and the damages, such that the breach is the proximate cause of the damages.’ ”
 
 Spotlite Skating Rink, Inc. v. Barnes,
 
 988 So.2d 364, 368(¶ 11) (Miss.2008) (citation omitted).
 

 1. Duty
 

 ¶ 13. Overly admits in its brief that it had a duty to Logan, and all other workers at this particular site, to provide and maintain the temporary lighting in the stairwell.
 

 ¶ 14. “The general rule is that a general contractor on a construction job who is in control of the premises is burdened with the duty to use ordinary care to provide a safe place for employees of a subcontractor to work.”
 
 Oden Constr. Co. v. McPhail,
 
 228 So.2d 586, 588 (Miss.1969) (citation omitted). This Court has extended this rule to include subcontractors.
 
 See Ainsworth v. Capform, Inc.,
 
 784 So.2d 1008 (Miss.Ct.App.2001). In
 
 Ainsworth,
 
 the plaintiff was an employee of Midwest Drywall, a subcontractor working on the Beau Rivage Hotel and Casino in Biloxi, Mississippi.
 
 Id.
 
 at 1009(¶ 2). He sued Capform, Inc., another subcontractor on the site, alleging negligence after he tripped over rebar that jutted out of the ground, and caused him to injure his foot and back.
 
 Id.
 
 The trial court granted summary judgment to Capform, but that ruling was later reversed by this Court.
 
 Id.
 
 at 1012(¶ 13). In reversing the summary judgment, this Court found a material issue of fact existed with regard to whether Capform owed the plaintiff a duty.
 
 Id.
 
 In reaching its conclusion, this Court stated “the fact that the ... prime contractor was required to provide a safe working environment for Ainsworth ... does not absolve subcontractor Capform from liability for its own acts of negligence that cause harm or injury to employees of other subcontractors.”
 
 Id.
 
 at 1011(¶ 9).
 

 ¶ 15. We find that Overly had a duty to all employees at the job site to furnish and maintain the temporary lighting in the interior stairwell. Next, we turn to whether Overly breached that duty.
 

 2. Breach
 

 ¶ 16. Both parties devote a large portion of their argument to this issue.
 
 *619
 
 Overly makes three separate arguments on this issue: (1) Logan provided no proof that Overly removed or disconnected the lighting; (2) Logan provided no proof that Overly knew the lighting was removed or disconnected; and (3) Logan provided no proof that Overly left the piece of conduit Logan slipped on in the stairwell. Logan counters with an overarching argument that Overly breached its duty to provide and maintain the lighting because the lights were not functioning at the time of his fall, and that the lights had been out for approximately three and one-half to four hours prior to his fall.
 

 ¶ 17. Overly is correct in that Logan failed to provide any proof that Overly left the piece of conduit, which caused him to fall, in the stairwell. Logan does not argue this on appeal. He dedicates the majority of his argument to whether Overly breached its duty by disconnecting or removing the lights, and whether it breached its duty by failing to supply lighting when it had knowledge that the interior stairwell was unlit. “The failure ... to properly brief this issue obviates the necessity of our review.”
 
 King v. State,
 
 857 So.2d 702, 717(¶ 25) (Miss.2003).
 

 ¶ 18. The next two arguments advanced by both parties is whether Overly removed or disconnected the lights, and whether Overly knew the lights were disconnected or removed. We will address these arguments together.
 

 ¶ 19. As correctly stated by Overly, Logan admits that he does not believe Overly removed the lighting in the stairwell. The following party admission occurred in Logan’s deposition:
 

 Q: And you’re not making a claim in this lawsuit that Overly Electric removed the temporary lighting, correct?
 

 A: No, I’m not saying they did it.
 

 Q: Okay. So it’s your claim that the painters removed the temporary lighting?
 

 A: Yes, sir
 

 Q: Not — not that Overly Electric removed the temporary lighting?
 

 A: Correct.
 

 ¶ 20. Logan admits, plainly and unambiguously, that he is claiming that Oli-phant, not Overly, removed the lighting. He goes on to admit that it was common knowledge around the construction site that the painters, Oliphant, had removed the lighting from the stairwell. Therefore, Overly is correct in its assertion that Logan failed to provide proof that Overly removed the lighting from the stairwell.
 

 ¶21. The most contested issue is whether Overly had knowledge the lights were off in the interior stairwell when Logan fell. Overly’s corporate designee maintained that Overly was not aware the lights were off at the time of Logan’s accident. At the end of his deposition, Logan stated that he did not have any reason to believe that Overly knew the temporary lighting had been removed in the stairwell. This is in stark contrast to his statements earlier in the deposition.
 
 [5]
 

 ¶ 22. Logan testified that, although he personally did not notify Overly’s personnel that the lights were out, Overly’s foreman knew the lights were out in the stairwell prior to Logan’s fall. Logan stated that during a break that morning, at ap
 
 *620
 
 proximately 9:00 a.m., Overly’s foreman told him that the painters had removed the lighting. However, the lights were still out when Logan fell at approximately 12:30 p.m. This establishes that the lights were off in the stairwell three to four hours before Logan’s accident.
 

 ¶ 23. In addition to the lights being out for approximately three to four hours before Logan’s fall, the testimony of Mark Isley also establishes that the lights were operable at the time of the accident. Isley was a co-worker of Logan’s at Jody on the Cresswell renovation project. He testified that after Logan fell, other workers at the job site came to the bottom of the stairwell to attend to Logan. However, it was completely dark, and no one could see the extent of Logan’s injuries. Someone then connected a florescent light to a fixture to supply light in that area. This establishes that the lighting fixtures were connected and working at the time of Logan’s accident. However, no lighting was provided in the stairwell at the time of Logan’s accident.
 

 ¶ 24. One must also add to this melting pot the affidavit of an employee of the general contractor. James Young signed an affidavit stating that it was not possible for the temporary lighting to simply be turned off at the Cresswell renovation project. He stated that the temporary lights would have to be disconnected or removed because the lights were wired directly into the temporary electric panel and did not have a switch on them; Overly would have been the only subcontractor that would have had access to this temporary panel; thus, Overly would have had control over turning off the temporary lighting.
 
 [6]
 
 These statements by Young were corroborated by Overly’s representative stating that no other subcontractor but Overly did the electrical work on this project.
 

 ¶ 25. The summation of this evidence is that: (1) the lights were out in the interior stairwell for approximately three to four hours before Logan’s accident; (2) Overly’s foreman knew the lights were out in the stairwell prior to Logan’s fall; (3) the light fixtures were connected on the day of the accident; and (4) Overly was the only subcontractor who could have turned off the temporary lighting. Viewing this evidence in the light most favorable to Logan, there is a genuine issue of material fact about whether Overly knew the lights were out in the interior stairwell on the day of the accident. Therefore, we find that summary judgment was improper, and this case must be remanded back to the trial court to determine whether Overly breached its duty to provide and maintain the temporary lighting in the interior stairwell.
 

 C. Assumption of Risk
 

 ¶26. Although the issue was not responded to by Overly, Logan argues in his brief that the trial court erroneously applied the assumption of risk doctrine as part of its basis for granting summary judgment. We will address his contention for clarification on remand.
 

 ¶ 27. The defense of assumption of the risk has been abolished in Mississippi and subsumed in the comparative fault doctrine. Weems & Weems,
 
 Mississippi Law of Torts,
 
 § 3:26 (citing
 
 Wilks v. Am. Tobacco Co.,
 
 680 So.2d 839 (Miss.1996)). Any action on the part of the plaintiff which might be characterized as an assumption of the risk should be considered
 
 by the jury
 
 in the context
 
 of
 
 comparative
 
 *621
 
 negligence.
 
 Id.
 
 A
 
 jtiry
 
 is also free to conclude that a plaintiffs action in voluntarily encountering a known risk was the sole proximate cause of his injuries and, thus, acts as a complete bar to recovery.
 
 Id.
 

 ¶ 28. A jury could decide that Logan was negligent in the events that led to his accident. Logan and his co-worker, Isley, used the unlit stairwell earlier that day, prior to his fall. Logan testified that he and Isley went up the interior stairwell after their morning break at 9 a.m., and he testified that the lights were out at this time. After Logan returned from lunch, he used the outside stairwell to go up to the third floor. He checked in the bathroom area where Jody was working that day, and he decided to go back downstairs to complete some more work there. Instead of walking to either end of the third floor where he knew the stairwell was lit, he decided to use the interior stairwell for convenience, knowing that the lights were out in it and that it would be dangerous to descend three flights of stairs in the dark.
 

 ¶ 29. However, Logan’s negligence should not operate as a complete bar to his recovery. A jury should decide what percentage of fault to attribute to Logan’s negligence, as well as whether Logan was fully at fault for this accident.
 
 [7]
 

 CONCLUSION
 

 ¶ 30. Logan sued both Oliphant and Overly alleging that both companies were negligent in causing him to fall down a flight of stairs while working on the Cress-well renovation project. The trial court entered a partial summary judgment for Oliphant and a full summary judgment for Overly. Oliphant’s appeal is not properly before this Court because the issue of Oli-phant’s negligence has not been adjudicated by the trial court. There has not been a Rule 54(b) certification of a final judgment or a petition for interlocutory appeal with regard to Oliphant; thus, we find that its appeal must be dismissed. Overly has admitted that it had a duty to Logan to provide and maintain the temporary lighting in the stairwell. A jury question exists as to whether Overly breached this duty. There is evidence to establish that Overly knew the lights were out that morning, yet it failed to remedy the problem. There is also evidence to support Overly’s contention that it did not have knowledge the lights were out in the stairwell that morning. Reviewing the evidence in a light most favorable to Logan, an issue of material fact — where one party swears to one version of the matter and another says the opposite — exists as to whether Overly was negligent and breached its duty by failing to provide and maintain the temporary lighting. Therefore, the judgment granting summary judgment to Overly is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.
 

 ¶ 31. THE JUDGMENT OF THE OK-TIBBEHA COUNTY CIRCUIT COURT GRANTING SUMMARY JUDGMENT AS TO OVERLY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. THE APPEAL IS DISMISSED FOR LACK OF JURISDICTION AS TO OLIPHANT. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN LLOYD G. OLI-
 
 *622
 
 PHANT & SONS PAINT CO., INC. AND OVERLY ELECTRIC COMPANY.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.
 

 [1]
 

 . Logan was Jody’s foreman on this particular job.
 

 [2]
 

 . Logan and a co-worker had previously descended the interior stairwell at approximately 9:00 a.m. and noticed that the lights were completely out.
 

 [3]
 

 .Logan has pruned his claims against Overly and Oliphant. He now focuses his claims against Overly for being negligent for failing to provide lighting in the stairwell and Oli-phant for being negligent when one of its employee left a piece of conduit in the stairwell causing him to fall.
 

 [4]
 

 . Rule 54(b) of the Mississippi Rules of Civil Procedure provides as follows:
 

 (b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counter-claim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment. In the absence of such determination and direction, any order or other form of decision, however designated which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
 

 [5]
 

 . We have stated that contradictory statements by a witness go to the weight and credibility of that witnesses’s testimony, not its sufficiency, and a summary judgment motion does not place the trial court in the role of weighing testimony and determining the credibility of witnesses.
 
 Giles v. Brown,
 
 962 So.2d 612, 617—18(¶ 20) (Miss.Ct.App.2006) (citing
 
 Stegall v. WTWV, Inc.,
 
 609 So.2d 348, 352-53 (Miss.1992)).
 

 [6]
 

 . It should be noted that Overly’s corporate designee testified in his deposition that, under a normal configuration, the electricity to the lights could be turned off by tripping the breaker or by an electrical overload.
 

 [7]
 

 . The jury should also determine if Overly's potential breach of their duty proximately caused his fall, and what, if any, damages Overly should be assessed.
 
 See Andrews v. Jitney Jungle Stores, Inc.,
 
 537 So.2d 447, 450 (Miss.1989) ("The issues of proximate cause, negligence and contributory negligence are for the jury to decide under proper instructions from the court”).