## CITY OF BILOXI v. SCHAMBACH

No. 42748 November 4, 1963 157 So. 2d 386

*Rae Bryant,* Gulfport, for appellant.

*Thomas J. Wiltz,* Biloxi, for appellee.

BRADY, J.

The appellee sued and recovered judgment in the Circuit Court of Harrison County against the appellant in the sum of $8,000 for personal injuries sustained by a fall on one of appellant's sidewalks. The fall was alleged to have been caused by the rising of one section of a sidewalk and the subsiding of an adjoining section, so that the east section was several inches higher than the west joining section, and that grass had been permitted to grow in a dividing crevice or crack between the two sections; that because of the abruptness and change in grade or height from one level of one section of the sidewalk to another, amounting to several inches in difference; and because of the grass that thereby a dangerous situation was created on which persons using the sidewalk in the exercise of ordinary care might be calculated to trip or stumble to their injury and damage.

The appellant filed a motion for a judgment notwithstanding the verdict, and for a new trial, and assigns as errors the refusal of the court below to grant to the defendant a directed verdict at the conclusion of the

plaintiff's testimony, and also that the verdict of the jury is against the overwhelming weight of the testimony. It is upon the refusal to grant the peremptory instruction to find for the defendant that the briefs of the appellant and appellee are directed.

The proof shows that the appellee, on a bright Sunday afternoon, July 2, 1961, between two and three o'clock, when she was approximately seven months pregnant, was walking in an easterly direction on the sidewalk adjacent to the north side of East Beach in the City of Biloxi. The weather was hot and the visibility was good; the sun was bright at times and at other times hazy; that while the appellee was passing in front of the home of one Mrs. Pringle, she came to a point where the sidewalk was uneven and where there were two different sections. One section of the sidewalk had subsided, or formed a depression or sunken angle compared to the other section, that they were very uneven, and there was grass growing in between this area. Appellant testified that the difference was approximately three or four inches at one end (north), and over two inches at the other end (south) of the sidewalk which extended east and west. The proof shows that the appellee stumbled or tripped over this change of height in the sidewalk, on the north side.

Appellant's attorney asked the following question:

"Q. State what happened and what the situation was and just what happened as you proceeded in front of the home of Mrs. Pringle."

The appellee replied:

"A. Well, I was walking leisurely along. I was in no hurry, and I tripped and fell on the broken or sunken section of the sidewalk. There was quite a bit of grass growing in between the sections."

"Q. What was the nature of this defect? Just explain what the nature of that defect was in the sidewalk.

"A. Well, the two different sections were uneven. One was a lower or depression or sunken angle compared to the other. They were very uneven, and there was grass growing in between this area.

"Q. There was an abrupt difference in the sidewalk?

"A. Yes, sir, it was several inches.

"Q. You say there was a difference of how much?

"A. Several inches. I would say approximately three or four inches at one end, and over two inches at the other end.

"Q. Did that difference extend all the way across the sidewalk?

"A. Yes, sir, it did.

"Q. Was that a break in the sidewalk, or was it where the sidewalk came together?

"A. It was where the concrete came together at the sections.

"Q. At that differential you state extended all the way across?

"A. Yes, it did.

"Q. Now you state that you were caused to trip and stumble at that particular time, is that correct?

"A. Yes, sir."

This was the testimony developed by the appellee's attorney from the appellee on direct examination. On cross-examination, we find the following pertinent testimony:

"Q. The area then was well lighted, there was no difficulty from the standpoint of being covered up by shade or shadows, it was well lighted, is that right?

"A. Other than the grass growing in that particular area.

"Q. You saw the grass, did you, Mrs. Schambach?

"A. Yes, you could see the grass. It camouflaged the cement.

"Q. You couldn't see the sidewalk beyond the grass? The grass was up above eye level?

"A. No sir, the grass was above the level of the raised portion of the cement.

"Q. You were then approaching from the left of the photograph to the right, is that right?

"A. Yes sir.

"Q. May I ask you, Mrs. Schambach, if in that approach if the uneven section of the sidewalk was lower at the point where you were approaching it from than it was beyond it further on to the east?

"A. Yes, it was, as you can see, the grass is growing there quite a bit.

The appellee was looking at her photograph, Exhibit 3. She testified that her Exhibits 2, 3 and 4 accurately and fairly represented the condition as it existed the day that she fell.

"Q. Now this photograph here, No. 4, does it fairly and accurately represent the condition as it existed at the time you fell, Mrs. Schambach?

"A. Yes, sir, you can't see the cement on this side.

"Q. I didn't ask you that. I asked you if it fairly and accurately represented the condition as it existed.

"A. Yes, it does.

"Q. Now if you want to say anything else you may do so.

"A. Well, as you are crossing this area, and if you are seven months pregnant, you don't see directly beneath your feet. As you can see, the grass is growing over profusely on the left side, and you don't see the top of the cement right in the particular area on the left side.

"Q. You were walking, Mrs. Schambach, along the north edge of the sidewalk?

"A. Yes, sir.

"Q. Just as close to the edge as you could get, is that right?

"A. I wouldn't say as close as I could get, but it was on the north side.

"Q. You say it had been a couple of months since you had been down in that area?

"A. It had been approximately three months.

"Q. Then that condition didn't exist the last time you were down there? Is that right?

"A. As far as I know the condition of the street all along that area has existed for quite a while.

"Q. This same condition had existed when you were down there three months before that?

"A. Yes, sir.

"Q. And you tell this court and jury that you couldn't see this condition because of the grass, is that right?

"A. Grass was growing right in the crack where the separation was.

"Q. You didn't look on the other side of this grass to see what was there, did you?

"A. You can't very well look on the other side when you are seven months pregnant. I was doing the best I could. I was walking along the street in a normal and leisurely manner.

"Q. You didn't notice the sidewalk was higher at one place than the other did you, Mrs. Schambach?

"A. The sidewalk was higher, yes, but there was grass growing between there and you didn't notice how much higher."

The proof shows that the appellee had been living at 1015 East Beach for more than four years prior to this accident; she fell in front of 1029 East Beach. She estimated that the width of the sidewalk was that of a normal sidewalk. She testified further that the pictures, or exhibits, introduced by appellant as Exhibits A and B, fairly and accurately represented the condition of the sidewalk and the location on the date that she fell and sustained the injuries complained of. She marked on Exhibit A and "X" where she alleges she actually fell, and on Exhibit B it is marked by a group of circles. She testified further that she moved over to the left side.

"Q. There wasn't anything except this grass that you claim was there to keep you from seeing the difference in the sidewalk, was there?

"A. Anything other than being seven months along.

"Q. You could see there on the right edge, you could see the disparity in the height there, couldn't you, Mrs. Schambach?

"A. You could see the concrete protruding more on the right side, but on the left side there was more grass and it looked more even.

"Q. You saw that did you, as you approached?

"A. Yes, I saw the grass.

"Q. What about the cement over on the right hand side, did you notice that?

"A. That's why I was walking on the left hand side.

"Q. You saw that and moved over to the left hand side, is that right?

"A. Yes, sir.

It is undisputed that the appellee fell, and sustained injuries; that she was confined in a hospital, that she gave birth to a still-born child, and that she sustained financial loss and medical expenses. There is no contest insofar as accuracy of instructions presented in this case is concerned, save the failure of the lower court to grant a peremptory instruction to the appellant.

The briefs submitted by the attorneys representing both the appellant and appellee are very fine and detail most all of the Mississippi cases cited by this Court on questions relating to the negligence or non-negligence of a municipality in the care and maintenance of its streets and sidewalks.

The basic question presented here for our consideration is simply whether the raised surface, or the projection of the east slab of concrete, where the separation occurred was of such a nature that danger therefrom might reasonably have been anticipated by appellant, and, thereby charge the appellant with negligence in

permitting this dangerous disparity in height between the two blocks of concrete to exist. This is the same question which has been repeatedly considered in the numerous cases which have been brought in this State and reviewed by this Court. Perhaps the question can be phrased more clearly as follows: Could the City of Biloxi have reasonably anticipated or foreseen that appellee or anyone who was using reasonable care for their own safety could have been injured in the day time while using this sidewalk in said reasonably safe manner? It is undisputed that the unevenness of the sidewalk had existed for a long time. Appellee testified that approximately three months before she had crossed over this same section of sidewalk.

The basic rule of law was stated succinctly in the case of City of Greenville v. Laury, 172 Miss. 118, 159 So. 121, decided in 1934. The question was simply, "Could the jury have justly said that the crevice in the appellant's street was of such character as to make the street unsafe for use by persons in the exercise of reasonable care, and that an ordinarily prudent person ought reasonably to have anticipated that some injury would probably result therefrom to a person when using the street and exercising reasonable care and caution in so doing?"

 █ It is not sufficient to say that injury to such a person was possible. In order to render a city liable, the injury to someone because of the defect must have been so probable that a reasonably prudent man could have anticipated that probability. In the *City of Greenville* case, this Court stated another basic rule of law as relating to whether or not the question should be submitted to a jury or decided by the trial judge, as follows:

"In an action at law based on negligence, the question of negligence vel non is for the determination of the jury, unless the doing of the act which caused the injury complained of is not in dispute, or conclusively appears

from the evidence and no inference except that of negligence or of no negligence can be justly drawn therefrom, in which event, the question is for the determination of the trial judge.''

In the *City of Greenville* case, the appellee stepped from a sidewalk into an intersecting street and the heel of her shoe went into a depression which varied from one-half to three inches in width and depth and eighteen inches to two feet in length. In this case the Court referred to the City of Meridian v. Crook, 109 Miss. 700, 69 So. 182 (1915), where eighteen inches from the edge of the sidewalk bricks became dislodged in the sidewalk, leaving a hole or depression therein not over three inches in depth. The Court held that this did not in itself show such a defect as to render the city liable for an injury sued on account thereof, and this Court stated in that case that it is a principle recognized in all the adjudicated cases that municipalities are only required to exercise ordinary care to keep and maintain their streets and sidewalks in a reasonably safe condition for the use of persons exercising ordinary care and caution; and that appellee must by a preponderance of the evidence show negligence on the part of the city in the construction or maintenance of the sidewalk in question; and that all of the witnesses other than appellee fixed the depression at not exceeding three inches, and, therefore, the Court held that such a defect was not in itself sufficient proof to render the city liable for the failure to maintain its sidewalks in a reasonably safe condition for the use of persons exercising ordinary care and caution. This rule of law has been reaffirmed many times in this State and is operative today.

In City of Meridian v. Crook, supra, the evidence showed incidentally that there were no lights burning on the street at or near where the injury occurred, and that the accident occurred just after dark; that lights located at the corner of the street on which said accident

occurred under normal conditions sufficiently illuminated the sidewalk in question. The proof failed, however, to show that the lights were actually burning at the time of the injury. Appellee testified in that case that she was walking in somewhat of a hurry. In the case at bar, appellee testified that she was walking in a normal manner and very leisurely.

The Court stated in City of Meridian v. Crook, supra, that "to sustain the judgment recovered by the appellee in the court below would be to announce a new measure of liability on the part of municipalities in the construction and maintenance of sidewalks. It would be equivalent to holding that sidewalks in the resident portions of our cities must not deviate three inches from a perfectly smooth surface and force the maintenance of sidewalks of cement or some similar construction. The practical result would be to render municipalities insurers of the safety of pedestrians;" that "the defect in the sidewalk complained of is just such a defect as perhaps exists in every municipality in the State, and the fall is one that might by accident be experienced by anyone in the home or on the streets." The rule that a city is not an insurer and is not expected to maintain sidewalks and streets in such an absolutely perfect condition as to render an accident impossible, but is expected to use reasonable care and prudence in detecting and remeding any defect which it might be fairly anticipated would be dangerous and liable to cause an accident is too well established to be discussed any further in this opinion.

The general rule is set forth in 63 C.J.S., Municipal Corporations, Par. 3, Sec. 807, as follows: "As a general rule, the duty of a municipal corporation to keep its streets and sidewalks in a reasonably safe condition does not charge it with the responsibility for every mere inequality or irregularity in the surface of the way. A municipality cannot be expected to maintain its side-

walks and street crossings in a perfectly level condition, and, where the defect consists of some slight variation between the elevation of adjoining paving blocks, flagstones, or curbstones, or irregularity in the junction of the sidewalk and curb, no liability is imposed. However, a raised service or projection of such a nature that danger therefrom might reasonably be anticipated may render the municipality liable. The height of an elevation is of itself not determinative of the question of liability of the municipality.''

The basic question of whether or not the peremptory instruction should have been granted to appellant turns upon the answer to this question: Was the defect in the sidewalk, which consisted of a rise of the east section of the sidewalk to a height of an inch and a half to two inches across and above the adjoining section, or to a height of over two inches on the south end and to approximately three or four inches on the north end of the east adjoining section, one that the city in the exercise of ordinary care could not have reasonably foreseen would result in injury to a person using the sidewalk with due care?

The undisputed testimony in this case discloses that the appellee was not unfamiliar with the condition of the sidewalk where she stumbled and fell. She testified that approximately three months before she had walked over the same sidewalk which was in the same condition. She experienced no difficulty at that time. While knowledge of a defect does not bar a recovery, Birdsong v. Mendenhall, 97 Miss. 544, 52 So. 795, knowledge of the defect does have a direct bearing on the question of the degree of negligence, if any, on the part of appellee. The appellee knew of the separation of the blocks in the sidewalk. Furthermore, she testified she could see the concrete protruding more on the right side, but that on the left side there was more grass and it looked more even. She blamed her pregnancy with the

fact that she could not look on the other side of the grass to see what was there. She stated because the grass was there. She stated because the grass was there "you didn't notice how much higher" the concrete was. .

The appellee testified that not only the picture exhibits 2, 3 and 4 which were introduced to her testimony, but also the pictures which were introduced as Exhibits A and B by the appellant, fairly and accurately represented the condition of the sidewalk. So there is no doubt about the photographs being a fair and accurate representation of the condition of the sidewalk at the time she stumbled and fell. Exhibit one, which was an action photograph showing appellee stepping over the difference in height of the two sections of the walk in the loose fitting sandals was properly excluded.

A close examination of all of these pictures discloses some clear and indisputable facts. The lens of the camera which took appellee's pictures 1, 2, 3 and 4 was lower than the eye level of the photographer. It was closer to the sidewalk and tended to accentuate the rise which existed between the surface of the east block and the west block of the sidewalk. These pictures reveal far more detail than do the pictures of the appellant. Although apparently taken from a lower position than the pictures offered by appellant, the appellee's pictures show that the top edge and west end of the east block of cement is plainly visible, and that the grass which grew in the crevice between the two blocks of concrete does not and did not prevent the appellee or any person exercising reasonable care in walking on the sidewalk there from seeing the rise of the east block of cement above the west block of cement across the width of the sidewalk, as was testified to by Mrs. Pringle.

The appellee states that she was caused to trip and stumble and suffer the resultant injuries of her fall. As was stated in City of Greenville v. Laury, supra, "we take judicial knowledge of what everybody knows, that

it is almost, if not quite, impossible for municipalities to prevent crevices in the streets and sidewalks as the one involved, which as a rule are the result of expansion and contraction from heat and cold. The law does not require that high degree of care.'' The sandy soil of the Gulf Coast on which this sidewalk was laid likewise contracts and expands and sinks causing the sidewalk to be uneven and wavy, as was testified to and revealed in the exhibits. It is also known by everybody, and of which we take judicial knowledge thereof, that a pregnant woman can step safely into a street from a curb, or from the street onto a curb, and that she can safely step into a car or walk up steps.

In the case of City of Meridian v. Crook, supra, it was pointed out by Justice Stevens that ''There are slight inequalities in sidewalks, and other defects and obstructions against which one may possibly strike his foot and fall; but if injury might be avoided by the use of such care and caution as every reasonably prudent person ought to exercise for his own safety, the city would not be liable.''

The defect in the case at bar, we conclude, was one that the City of Biloxi in the exercise of ordinary care could not have reasonably foreseen would result in injury to a person using the sidewalk with due care. Appellee has herself alone to blame for her injury; a very slight degree of care for her own safety in her pregnant condition would have prevented the injury. The fall and resulting injuries by appellee in this case are most unfortunate and the sympathy of any court would naturally be aroused in her favor, but this does not constitute grounds for holding the municipality liable.

This case is distinguishable from the facts in the case of Birdsong v. Mendenhall, supra, where there was a dangerous condition. ''The exact character of the defect complained of is not disclosed in the reported

case. The principal defense was to the effect that the plaintiff had knowledge of the defect and was thereby debarred from recovery. The point was not raised that the defect complained of was not an unreasonable situation, but from the briefs of counsel it was gathered that the defect was indeed dangerous.''

Insofar as Gould·v. Town of Newton, 157 Miss. 111, 126 So. 826, cited by appellee as governing authority is concerned, it was pointed out in the case of City of Hazlehurst v. Matthews that the doctrine was applied in the Gould case that ''there was no liability on the part of the city if the defect was one that the city in the exercise of ordinary care could not have reasonably foreseen would result in injury to a person using the sidewalk with due care.'' The Court went further and stated: ''On its facts, however,. it was close to the feather edge whether or not a directed verdict was proper.'' The defect in the Gould case was a two by four stake driven in the traveled portion of the way for pedestrians which protruded about an inch above it, and although it appears to have been a rather insignificant obstruction of the sidewalk, there was. testimony that this foreign object was a dangerous obstruction of the sidewalk. The defect in the Gould case is not one that is caused by the elements, by nature, through expansion from heat or contraction by cold. It is a foreign, almost concealed defect that had to be placed there by an overt act, which was testified to as being dangerous.

In the case of City of Greenville v. Laury, supra, the Court also points out the distinction between cracks or crevices as in Meridian v. Crook, supra, and objects protruding as in Gould v. Town of Newton, supra. In the *Greenville* case, this Court pointed out that there is nothing in the *Gould* case indicating that the Court intended to depart from either of the rules (1) as to the measure of care which a city must exercise in order

to keep its streets reasonably safe for use by pedestrians exercising reasonable care and caution, and (2) the rule therein set forth as to when the Court should direct a verdict. All the Court held in the *Gould* case was that under these rules the question of negligence vel non was for the determination of the jury. The Court stated further that "whether these rules were rightly applied there or not is of no concern here and will be for determination when a case is presented on the same facts as there, for a holding that the rules were wrongly applied there, which we do not mean to intimate was the case, would not disturb the rules themselves." Citing Leavenworth v. Reeves, 106 Miss. 722, 64 So. 660.

In the case of City of Meridian v. Raley, 238 Miss. 304, 118 So. 2d 342, the facts are very similar to the facts in the case at bar — the difference being in the Raley case that the concrete slab abutted to a dirt sidewalk where grass was growing between the end of the dirt sidewalk and the beginning of the concrete sidewalk. Appellee testified she caught her foot on the edge of the sidewalk when she went to step up about six inches onto the concrete sidewalk, causing her to fall and sustain the alleged injuries. The Court, speaking through Chief Justice McGehee, held that the appellee failed to meet the burden of proof required of her under the principles announced in the cases of City of Vicksburg v. Hennessy, 54 Miss. 394; City of Meridian v. Crook, 109 Miss. 700, 69 So. 182; Pomes v. McComb City, 121 Miss. 425, 83 So. 636; City of Greenville v. Laury, 172 Miss. 118, 159 So. 121; Ming v. City of Jackson, 202 Miss. 260, 31 So. 2d 900; City of Greenville v. Williams, 213 Miss. 564, 57 So. 2d 266, that the exposure of the public to danger is not negligence if there is no unreasonable risk imposed by the actor, and even so, there is no actionable negligence if the actor has used reasonable care to maintain its sidewalks reasonably safe for use by reasonably careful persons. The Court fur-

ther held that appellee, according to her own testimony, was not exercising reasonable care and caution for her own safety.

The facts in the case at bar and the rules of law applicable are so similar that the *Raley* case can be cited as controlling authority, and the City of Biloxi, as the City of Meridian in the Raley case, should have been granted the peremptory instruction requested by the appellant.

Reversed and judgment here for appellant.

*McGehee, C. J., and Kyle, Ethridge, Gillespie and McElroy, JJ.*, concur.