# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01826-COA

**BARBARA JONES**                                                                                    **APPELLANT**

**v.**

**WAL-MART STORES EAST, LP, FARON**                                          **APPELLEES**
**CABLER, STORE MANAGER AND THOMAS F.**
**KOPPE, SAFETY MANAGER**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/03/2014 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID PAUL PITRE |
| ATTORNEYS FOR APPELLEES: | WILBUR PEMBLE DELASHMET |
| | CHAD CHRISTOPHER MARCHAND |
| | ASHLEY POWELL GRIFFIN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT GRANTED TO APPELLEES |
| DISPOSITION: | AFFIRMED - 04/05/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     Barbara Jones alleges that "she tripped and fell in a pothole/crack" in the parking lot of the Wal-Mart Super Center on Highway 49 in Gulfport.  She sued Wal-Mart Stores East L.P. and two of its employees (collectively, "Wal-Mart") for negligence.  Wal-Mart moved for summary judgment on three grounds, including that the "pothole/crack" was not a dangerous condition.  The Harrison County Circuit Court granted Wal-Mart's motion, and Jones appealed.  We agree with the circuit court that there is no genuine issue of material fact

and that Wal-Mart is entitled to a judgment as a matter of law. We therefore affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. A little after 5 p.m. on December 5, 2009, Jones and her fiancé, Jerry Bush, stopped at the Wal-Mart Super Center on Highway 49 in Gulfport to buy some groceries. Jones had been to the store "maybe" once before, as she usually shopped at a Wal-Mart in Bogalusa or Covington, Louisiana. Jones got out of the car to go inside the store, but Bush stayed in the car. As she walked through the parking lot toward the store, Jones tripped and fell forward onto her right knee. Jones testified that she "was looking straight ahead of where [she] was going," not looking down, when she tripped and fell. Jones described the shoes that she was wearing as a "low heel, quarter boot like."

¶3. Jones testified that she did not know what caused her to trip until Bush looked over the area and told her that she had fallen in a pothole. Jones could not recall that she ever saw the pothole herself, even after she fell. She only knew that Bush later showed her photographs that he had taken of it.

¶4. Jones testified that after she fell, she got up and "hobbled" over to a security guard who was outside the store, and she then called Bush, presumably on his cell phone. In response to Wal-Mart's summary judgment motion, Jones submitted an affidavit from Bush. Bush claims that from his "vantage point" in the car, he witnessed Jones "step in a hole and suddenly stumble in the crosswalk in front of the store" and that he "came to her aid soon thereafter." Bush says that he confirmed "the exact area of the location where [Jones] fell"

by talking to Jones and reviewing Wal-Mart's own video of the parking lot.

¶5.   Bush got a wheelchair for Jones, and the security guard told them that they should go inside the store and make a report of the incident.  Bush and Jones went to the security desk and asked to talk to a manager.  The store manager, Faron Cabler, spoke with them and made a report of the incident.  Jones also completed a customer statement in which she described her fall.  Jones wrote that she had "stepped in crack pothole outside [Wal-Mart's] front door and severely hurt [her] ankle and foot.  Right in front of security guard Ron."

¶6.   Bush also purchased a camera and took photographs of the location where he believed Jones had fallen.   At her deposition, Jones did not recall whether she was with Bush when he took the photographs.  In his affidavit, Bush stated that Wal-Mart employees also took photographs of the area.

¶7.   Bush then took Jones to the hospital, but the couple returned to Wal-Mart later that evening.  Bush says that when they returned, he saw Wal-Mart employees patching the hole where he believed Jones had fallen.

¶8.   Cabler and others testified that all Wal-Mart employees are instructed to report any hazards that they discover in the store's parking lot, although no employee or security guard[1] is specifically tasked with performing regular safety inspections of the lot.

¶9.   Cabler testified that if a crack or hole was discovered in the parking lot, it would be repaired by either in-house maintenance or an outside contractor.  Cabler explained that the

[1] According to Wal-Mart, the store's security guards are employed by an independent contractor, not Wal-Mart.

3

store's employees could repair "small cracks" with an asphalt patch purchased from Lowe's or Home Depot. Cabler would work through Wal-Mart's corporate office to hire a contractor to address more significant issues. There is no direct evidence that Cabler or any other Wal-Mart employee was aware of the crack in question prior to Jones's fall. After the incident, Cabler asked an employee to fill in the crack with an asphalt patch.

¶10. On May 7, 2012, Jones filed a complaint against Wal-Mart, Cabler, and Thomas Koppe, the store safety manager. On September 3, 2012, Wal-Mart moved for summary judgment. Wal-Mart argued that it was entitled to a judgment as a matter of law because Jones herself did not know what caused her fall; because there was no evidence that Wal-Mart had actual or constructive notice of the crack; and because the crack that allegedly caused her fall was not a dangerous condition. In response, Jones argued that all three issues raised genuine issues of material fact. Following a hearing, the court granted Wal-Mart's motion for summary judgment, and Jones timely appealed.

**STANDARD OF REVIEW**

¶11. "We review the grant or denial of a motion for summary judgment de novo, viewing the evidence 'in the light most favorable to the party against whom the motion has been made.'" *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013) (quoting *Pratt v. Gulfport–Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 71 (¶5) (Miss. 2012)). "A grant of summary judgment will be upheld only when, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact" and "the

4

moving party is entitled to judgment as a matter of law." *Forbes v. Gen. Motors Corp.*, 993 So. 2d 822, 824 (¶7) (Miss. 2008). However, "summary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Karpinsky*, 109 So. 3d at 89 (¶11) (quotation marks omitted). Furthermore, the non-moving "party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or [depositions, answers to interrogatories, or admissions], must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e).

## DISCUSSION

¶12. The parties agree that Jones was a business invitee of Wal-Mart when she fell in the parking lot. Under Mississippi law, "[t]he owner or operator of business premises owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition." *Jerry Lee's Grocery Inc. v. Thompson*, 528 So. 2d 293, 295 (Miss. 1988). This duty requires the business owner to take certain steps to protect its customers from "dangerous conditions" on the premises of which the business is or should be aware:

> [I]f the operator is aware of a dangerous condition, which is not readily apparent to the invitee, he is under a duty to warn the invitee of such condition. . . . When a dangerous condition on the premises is caused by the operator's own negligence, no knowledge of its existence need be shown. When a dangerous condition on the premises . . . is caused by a third person unconnected with the store operation, the burden is upon the plaintiff to show that the operator had actual or constructive knowledge of its presence.

*Id.* (citations omitted). If a dangerous condition is "open and obvious," the business owner

5

has no duty to warn customers of its existence, but "it does not eliminate the [owner's] duty to maintain the premises in a *reasonably* safe condition." *Mayfield v. The Hairbender*, 903 So. 2d 733, 739 (¶27) (Miss. 2005) (emphasis added). Thus, there may remain a question whether the business "was negligent for failure to repair an alleged dangerous condition." *Id.* As the foregoing indicates, regardless of the invitee's precise theory of premises liability, proof that her injury was caused by a "dangerous condition" is an essential element of her claim. *Stanley v. Boyd Tunica Inc.*, 29 So. 3d 95, 97 (¶10) (Miss. Ct. App. 2010). Because "the store owner is not an insurer of business invitees' injuries," mere proof that the invitee fell and was injured while on the premises is insufficient to establish liability. *Byrne v. Wal-Mart Stores Inc.*, 877 So. 2d 462, 465 (¶6) (Miss. Ct. App. 2003).

¶13. In this case, Wal-Mart argues that it is entitled to a judgment as a matter of law because Jones herself cannot say that the crack at issue caused her fall; because there is no evidence that the store or its employees had actual or constructive knowledge of the crack; and because the crack simply was not a dangerous condition. Jones argues that, considered together, her own testimony, Bush's affidavit, and a still picture from video of the store's parking lot are sufficient evidence of the location of her fall to survive summary judgment. Jones also argues that a fact-finder could infer that Wal-Mart had actual or constructive knowledge of the crack because it was in a high-traffic area directly in front of the store. For purposes of this appeal, we may assume for the sake of argument that these two disputes presented triable issues of fact. We may do so because we conclude that the circuit court

6

properly granted summary judgment on the ground that the crack is not a dangerous condition.

¶14.  "Mississippi has long recognized that normally encountered dangers such as curves, sidewalks, and steps are not hazardous conditions.  Often such pathways contain cracks and changes in elevation; and, as such, they do not become hazardous conditions simply because they contain minor imperfections or defects." *Knight v. Picayune Tire Servs. Inc.*, 78 So. 3d 356, 359 (¶9) (Miss. Ct. App. 2011) (quotation marks, brackets omitted); *accord Parker v. Wal-Mart Stores Inc.*, 261 F. App'x 724, 726-27 (5th Cir. 2008) (same); *see also Trull v. Magnolia Hill LLC*, 171 So. 3d 518, 521 (¶10) (Miss Ct. App. 2014) ("Mississippi caselaw has consistently held that the existence of slight variations in walkways . . . does not constitute a dangerous condition."); *Penton v. Boss Hoggs Catfish Cabin LLC*, 42 So. 3d 1208, 1210 (¶11) (Miss. Ct. App. 2010) (same).  "[N]o . . . property owner can be expected to maintain its sidewalks in a perfectly level condition, and where the defect consists of some slight variation between two adjoining paving blocks, no liability is imposed." *Bond v. City of Long Beach*, 908 So. 2d 879, 881-82 (¶7) (Miss. Ct. App. 2005).

¶15.  Thus, in *Penton*, *supra*, a customer tripped and fell on an uneven concrete pad on the walkway leading to a restaurant from its parking lot, but we held, as a matter of law, that the slight height difference was not a dangerous condition.  *Penton*, 42 So. 3d at 1210-11 (¶¶11-12).  Similarly, in *Knight*, *supra*, we held that a "seam" creating an uneven surface in an asphalt parking lot is not a dangerous condition.  *Knight*, 78 So. 3d at 358-59 (¶¶4-5, 8-9).

In addition, in a number of different cases, federal courts applying our common law have reached similar conclusions. For example:

- In *Parker*, *supra*, a Wal-Mart customer fell when the heel of her shoe landed in a crack in the expansion joint of a curb. *Parker*, 261 F. App'x at 725. Though the crack was 3.5 inches wide and 2 inches deep, *id.*, the Fifth Circuit held that the store was entitled to summary judgment because the defect was not a dangerous condition under Mississippi law, *id.* at 727-28.

- In *Mack v. Waffle House Inc.*, No. 1:06CV559, 2007 WL 1153116 (S.D. Miss. Apr. 18, 2007) (Walker, Mag. J.), a customer was injured after tripping on a crack in the restaurant's sidewalk that was 2 inches wide, 4.75 inches long, and 0.75 inches deep. The court granted summary judgment, holding that the crack was not a dangerous condition. *Id.* at *1-*2.

- In *Quick v. Strategic Restaurants Acquisition Co.*, No. 3:12-cv-301, 2013 WL 1305583 (S.D. Miss. Mar. 28, 2013) (Reeves, J.), a Burger King customer tripped and injured herself in a "pothole" in the parking lot that was "no more than 10 inches around and [1.5] inches deep." *Id.* at *2. The court held that the restaurant was entitled to summary judgment because the pothole was not a dangerous condition. *Id.*

- In *McCain v. Lehman Bros. Inc.*, No. 3:06-CV-327, 2008 WL 872431 (S.D. Miss. Mar. 27, 2008) (Wingate, C.J.), the court held that "two large cracks" in the sidewalk outside of the Metrocenter Mall were not a dangerous condition given that the concrete blocks on either side of the cracks "had only a slight height differential." *Id.* at *3.

- Finally, in *Chance v. Wal-Mart East L.P.*, No. 3:14-cv-363, 2015 WL 4496442 (S.D. Miss. July 23, 2015) (Barbour, J.), a Wal-Mart customer fell and injured herself when her foot stuck in a 1.5 to 1.75 inch indentation in the store parking lot. *Id.* at *1. The court held that, as a matter of law, the complained of indentation was not a dangerous condition. *Id.* at *2.

These federal decisions obviously are not binding on this Court but are persuasive. *See, e.g.,*

8

*Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 611 n.15 (Miss. 2009); *Boteler v. State Farm Cas. Ins.*, 876 So. 2d 1067, 1070 (¶10) (Miss. Ct. App. 2004).

¶16.   The result may be different if a defect is concealed from view.  *See Parker*, 261 F. App'x at 727 (citing *Wooten v. Wal-Mart Stores Inc.*, 104 F. App'x 977 (5th Cir. 2004)). Alternatively, a walkway feature may be a dangerous condition if it is of a type that is not "usual" and "normally expected" by invitees.  *See Wood v. RIH Acquisitions MS II LLC*, 556 F.3d 274, 281 (5th Cir. 2009) (declining to hold, as a matter of law, that raised reflectors in the driveway near a casino entrance were not an unreasonably dangerous condition (citing *Tate v. S. Jitney Jungle Co.*, 650 So. 2d 1347, 1351 (Miss. 1995))); *cf. City of Natchez v. Jackson*, 941 So. 2d 865, 869-70 (¶¶5-9) (Miss. Ct. App. 2006) (stating that although "naturally occurring defects in sidewalks" are not dangerous conditions, a hole in a steel "coal grate" placed in the middle of a sidewalk may be, particularly given the defendant's "admission" that the grate was an "unreasonable trip hazard").  But the crack at issue in this case was not concealed, and we have held that such cracks in walkways *are* a condition "normally encountered" by business invitees.  *Knight*, 78 So. 3d at 359 (¶9).

¶17.   Jones primarily argues that her case is distinguishable because this crack is not a mere crack but a "crevasse four inches deep and four inches wide and twelve inches long."  Jones worries that "in a few more decades an innocent injured victim will find themselves at the bottom of a cavern looking up at a . . . premises owner (this time not with a ruler or yardstick but with a long spooling measuring tape, eager to convince the courts to rule that this too was

9

not big enough be deemed hazardous)." While ably argued, we believe that Jones's contention is overstated. The crack at issue here, while perhaps slightly larger than those at issue in prior cases, remains a crack of the sort that customers of a business may normally expect to encounter as they traverse a parking lot or sidewalk.[2] The crack, pothole, or other height differential at issue in each of the cases discussed above was large enough to cause the plaintiff to trip and fall, just as Jones alleges occurred here. The principle derived from those cases is that such cracks are not dangerous conditions because they are normally encountered by invitees, not because they are of any particular size. *Knight*, 78 So. 3d at 359 (¶9). Viewed from this perspective, this crack is not distinguishable, and it is not a dangerous condition.

¶18.    Jones also relies heavily on our Supreme Court's decision in *Mayfield*, 903 So. 2d 733, arguing that it precludes summary judgment on her negligence claim. However, *Mayfield* held only that an open and obvious danger is not an absolute defense in a premises liability case in which the plaintiff alleges that the defendant was negligent in failing to repair a dangerous condition. *See id.* at 737 (¶¶16-19). Rather, the issue should be considered by the jury under a comparative negligence standard. *See id.* at (¶19). The *Mayfield* opinion did not address the question whether the defect at issue in that case—broken pavement that "jutted up" over steps leading to the business, *see id.* at 734 (¶3)—constituted a dangerous

---

[2] Photographs that Bush took of the crack are reproduced in Jones's initial brief on appeal, which is available on the Court's website. Wal-Mart argues that the photographs actually contradict Jones's claim that the crack was four inches deep.

condition.  Accordingly, *Mayfield* is not on point in this case.

¶19.    For the foregoing reasons, we agree with the circuit court that there is no genuine issue of material fact and that Wal-Mart is entitled to a judgment as a matter of law because the parking lot crack that allegedly caused Jones to trip and fall was not a dangerous condition.  Accordingly, we affirm without reaching the alternative grounds for summary judgment urged by Wal-Mart.[3]

¶20.    **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED.   ALL  COSTS  OF  THIS  APPEAL  ARE  ASSESSED  TO  THE APPELLANT.**

**LEE,  C.J.,  GRIFFIS,  P.J.,  BARNES,  ISHEE,  CARLTON  AND  FAIR,  JJ., CONCUR.  IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  GREENLEE, J., NOT PARTICIPATING.**

---

[3] Jones argues that she is entitled to the benefit of a spoliation presumption because Wal-Mart destroyed evidence by filling in the crack after she left the store.  *See Thomas v. Isle of Capri Casino*, 781 So. 2d 125, 133 (¶37) (Miss. 2001) ("When evidence is . . . destroyed by one party (the 'spoliator'), thus hindering the other party's ability to prove his case, a presumption is raised that the missing evidence would have been unfavorable to the party responsible for its loss.").  The argument is without merit.  Bush took photographs of the crack before he and Jones left the store, and for purposes of this appeal, we have accepted Jones's contentions as to what they depict.  Jones did not file suit until almost two and a half years after the incident.  Wal-Mart was not obligated to leave an allegedly injury-causing crack in its parking lot indefinitely.