# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00238-COA

**JANE RODRIGUEZ**                                                    **APPELLANT**

**v.**

**DIAMONDHEAD COUNTRY CLUB AND**                              **APPELLEE**
**PROPERTY OWNERS ASSOCIATION INC.**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/29/2024 |
| TRIAL JUDGE: | HON. RANDI PERESICH MUELLER |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL L. FONDREN |
| ATTORNEY FOR APPELLEE: | WADE G. MANOR |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 03/25/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Jane Rodriguez brought a premises liability case against Diamondhead Country Club and Property Owners' Association Inc. (Diamondhead), seeking recovery for injuries that she alleged occurred when she "tripped and fell on the sidewalk where it [was] unlevel" as she was leaving the Diamondhead pool area. The Hancock County Circuit Court granted summary judgment in Diamondhead's favor, finding that the approximately one-half-inch height differential between the sidewalk slabs at issue was not a "dangerous condition" so as to impose liability on Diamondhead for Rodriguez's injuries. Rodriguez appealed. Finding no error, we affirm summary judgment in Diamondhead's favor.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.      Rodriguez was a resident of the Diamondhead, Mississippi community and a member of the Diamondhead Property Owners' Association.  In the early afternoon of September 28, 2019, Rodriguez went to the community pool.  The weather was "clear and sunny."  After spending about twenty minutes at the pool, she decided to leave.  According to Rodriguez, as she was leaving the pool area, she tripped and fell from an "uneven crack" in the "seam of the sidewalk."  Rodriguez said that as she was walking, she was holding her beach bag in front of her, "[s]o I really wasn't—I was looking towards my car.  I wasn't looking down at the sidewalk."  As a result of her fall, Rodriguez broke her shoulder and "ended up losing a tooth."  Rodriguez said that this had been the first time she used the sidewalk from the pool to the parking lot.  Usually, she would "always cut through the grass and go through the gate."

¶3.      On January 25, 2022, Rodriguez filed a premises liability complaint against Diamondhead as a result of her fall.  She alleged that Diamondhead "was negligent in that it failed to maintain a reasonably safe sidewalk.  The sidewalk was not level and [Rodriguez] tripped and fell on the sidewalk where it [was] unlevel."  Diamondhead filed its answer, asserting, among other defenses, that Rodriguez's complaint failed to state a claim upon which relief may be granted.  *See* M.R.C.P. 12(b)(6).

¶4.      After conducting discovery, Diamondhead moved for summary judgment, arguing that it was entitled to judgment as a matter of law because the "alleged unlevel sidewalk [did] not constitute a dangerous condition," so Diamondhead did not "breach its duty to [Rodriguez] to keep its premises in a reasonably safe condition."  In the alternative, Diamondhead

2

asserted that "even if the condition were considered dangerous, the condition was open and obvious and there is no duty to warn [Rodriguez] of an open and obvious condition."

¶5.     A month after Diamondhead filed its motion for summary judgment, Rodriguez filed a "Designation of Expert."  Rodriguez designated Justin Cree, a registered professional engineer, to offer his opinion "regarding the unreasonably hazardous vertical clearance issues of the subject sidewalk."  His report is discussed in further detail below.

¶6.     Rodriguez responded to Diamondhead's summary judgment motion a month later, asserting that whether the uneven sidewalk was a dangerous condition was a question of fact in this case, and, in any event, Diamondhead was negligent per se because the condition of the sidewalk violated certain building code provisions.  Rodriguez attached as exhibits to her response photographs of the portion of the sidewalk where she fell, her affidavit describing how she fell, and the affidavit of her expert, Cree.

¶7.     In preparing his report and affidavit, Cree did not visit the site but relied on photographs taken by Rodriguez's lawyer.  Based on these photographs, Cree opined that "the concrete joint, where the fall occurred, had unreasonable hazardous vertical clearance issues."  According to the photographs taken by Rodriguez's lawyer, Cree said that "[t]he exact concrete joint that was the cause of the injury was measured to have a vertical difference of 0.5" in the center slab and 0.625" on the western edge."[1]  As support for his opinion that the uneven slab was unreasonably dangerous, Cree stated that "[t]he City of

_____

[1] Cree also described several ways the raised concrete slab could be repaired, including creating a beveled edge along the uneven slab, replacing the concrete slab entirely, or spraying foam through holes drilled in the slab to raise it and make it level with the adjacent area.

3

Diamondhead has adopted the [IBC], version 2018." Cree then acknowledged, however, that for the most part, the IBC does not apply to this case: "The IBC was developed for ground up construction, which does not really apply to the accident site. The sidewalk slab is considered more of a civil site item."

¶8. But Cree also offered the specific opinion that with respect to the pool entrance, "[International Building Code (IBC)] section 1110, *Recreational Facilities*, subsection 4.14, *Swimming pools, wading pools, hot tubs and spas* . . . does pertain to the accident site." Section 1110.4.14 provides, "[s]wimming pools . . . shall be accessible and be on an accessible route." Cree explained that an "accessible route" is one that meets the requirements of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101–12213 (2018). To avoid repetition, we address Cree's specific opinion and these provisions in further detail in our discussion of Rodriguez's negligence per se theory of liability below.

¶9. In its reply, Diamondhead addressed Rodriguez's negligence per se argument, arguing that this doctrine did not apply because Rodriguez is not disabled, and therefore she is not within the class of persons protected by the IBC and ADA provisions relied upon by Cree. Further, Diamondhead asserted that Rodriguez did not suffer the type of harm contemplated by these provisions—that is, Rodriguez does not allege that she was discriminated against and prevented from pool access based on a disability.

¶10. Following a hearing, the circuit court granted Diamondhead's motion for summary judgment. The circuit court found that the approximately one-half-an-inch height differential

4

between the two sidewalk slabs at issue did not constitute a dangerous condition, and therefore "[i]t cannot be said that [Diamondhead] breached its duty to [Rodriguez] to keep its premises in a reasonably safe condition or failed to warn Plaintiff of such non-dangerous condition." Rodriguez appealed, asserting that she presented a genuine issue of material fact whether the "elevated sidewalk that tripped [her] is an unreasonably dangerous condition."

**STANDARD OF REVIEW**

¶11.    "An appeal from summary judgment is reviewed de novo, and we view the evidence in the light most favorable to the non-movant." *Walker v. Cellular S. Inc.*, 309 So. 3d 16, 24 (¶26) (Miss. Ct. App. 2020).   Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

¶12.    The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). "If [the non-moving party] does not so respond, summary judgment, if appropriate, shall be entered against him." *Id.*

¶13.    "[S]ummary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Karpinsky v. Am. Nat. Ins. Co.*, 109 So. 3d 84, 89 (¶11) (Miss. 2013) (internal quotation marks omitted).

5

¶14.    In any negligence action, "the plaintiff must show duty, breach, causation, and damages." *Clinton Healthcare LLC v. Atkinson*, 294 So. 3d 66, 71 (¶9) (Miss. 2019).  With respect to a premises liability case, as here, the duty owed to the injured party depends on "whether the injured party was an invitee, licensee, or a trespasser at the time of the injury." *Walker*, 309 So. 3d at 24 (¶27).  As a Diamondhead homeowner and member of the Diamondhead Property Owners' Association, Rodriguez was an "invitee" at the time she was injured.  *Green v. Dalewood Prop. Owners' Ass'n Inc.*, 919 So. 2d 1000, 1007 (¶18) (Miss. Ct. App. 2005) (finding property association members were invitees on association's premises).  Diamondhead therefore owed Rodriguez the "duty to . . . exercise reasonable care to keep the premises in a reasonably safe condition." *Jones v. Wal-Mart Stores E. LP*, 187 So. 3d 1100, 1103 (¶12) (Miss. Ct. App. 2016) (quoting *Jerry Lee's Grocery Inc. v. Thompson*, 528 So. 2d 293, 295 (Miss. 1988)).

¶15.    But a business owner "is not an insurer of the customers using the parking lot and sidewalks, and is not liable for injuries caused by conditions which are not dangerous or which are or should be known or obvious to the customer." *Stanley v. Morgan & Lindsey Inc.*, 203 So. 2d 473, 476 (Miss. 1967).  The business owner "is not required to keep the premises absolutely safe, or in such a condition that no accident could possibly happen to a customer." *Id.*  As such, "regardless of the invitee's precise theory of premises liability, proof that her injury was caused by a 'dangerous condition' is an essential element of her claim." *Jones*, 187 So. 3d at 1104 (¶12).

## I.    Dangerous Condition

¶16.    Rodriguez asserts that she showed that a genuine issue of material fact exists whether the approximately one-half-inch height differential between the sidewalk slabs was a dangerous condition because (1) the uneven walkway was not in a condition "normally encountered" by an invitee at the Diamondhead community; and (2) "[a] sudden vertical elevation change of about one-half of an inch is not allowed under the Diamondhead building code."  We are not persuaded by either argument.

¶17.    "Mississippi has long recognized that normally encountered dangers such as curves, sidewalks, and steps are not hazardous conditions.  Often such pathways contain cracks and changes in elevation; and, as such, they do not become hazardous conditions simply because they contain minor imperfections or defects."  *Carroll v. Singing River LLC*, 309 So. 3d 567, 571 (¶9) (Miss. Ct. App. 2020).  This understanding is particularly relevant in this case, where "no . . . property owner can be expected to maintain its sidewalks in a perfectly level condition, and where the defect consists of some slight variation between two adjoining paving blocks, no liability is imposed."  *Bond v. City of Long Beach*, 908 So. 2d 879, 881-82 (¶7) (Miss. Ct. App. 2005) (citing *City of Biloxi v. Schambach*, 247 Miss. 644, 655-56, 157 So. 2d 386, 391 (1963)).  In short, "the existence of a slight height difference on a walkway does not constitute an unreasonable dangerous condition."  *Penton v. Boss Hoggs Catfish Cabin LLC*, 42 So. 3d 1208, 1210 (¶11) (Miss. Ct. App. 2010).

¶18.    In numerous cases, the supreme court and this Court have found that elevation differences in walkways ranging from one-half of an inch to four inches are not inherently

dangerous. In *Schambach*, for example, the plaintiff sought to recover for the injuries she incurred when she tripped and fell over an uneven portion of one of the City's sidewalks. *Schambach*, 247 Miss. at 647, 157 So. 2d at 387. The Mississippi Supreme Court held that the three- to four-inch height disparity between the concrete sidewalk blocks was not a dangerous condition, and therefore it was insufficient to impose liability on the City. *Id.* at 658, 157 So. 2d at 392. Similarly, in *Carroll*, this Court affirmed summary judgment in the mall owner's favor, concluding that a three-inch raised "seam" between a concrete handicap walkway and the sidewalk was not an inherently dangerous condition. *Carroll*, 309 So. 3d at 571 (¶11). Likewise, in *Penton*, the plaintiff alleged she tripped and fell on an uneven concrete pad leading from the parking lot to a handicap ramp that was the only entrance into the restaurant. *Penton*, 42 So. 3d at 1209 (¶2). We held that "[w]hile the height of the concrete pad may not have been uniform in relation to the parking lot, there is nothing in the record to create a genuine issue of material fact that the concrete pad created a dangerous condition." *Id.* at 1211 (¶12). As such, we affirmed the circuit court's grant of summary judgment. *Id.; see also Bond*, 908 So. 2d at 881-82 (¶¶7-10) (affirming trial court's ruling finding no breach of duty where the plaintiff "tripped on an irregularity in the pavement of approximately one inch").[2]

---

[2] In the same way, Mississippi courts in the following cases found no dangerous condition as a matter of law with respect to the alleged walkway defects. *McGovern v. Scarborough*, 566 So. 2d 1225, 1228 (Miss. 1990) (threshold rising 0.75" above the surrounding floor); *City of Greenville v. Laury*, 172 Miss. 118, 159 So. 121, 122 (1935) (crevice in street measuring 0.5" wide, 3" deep, and 18-24" inches long); *Bradley v. Diamondhead Country Club & Prop. Owners Ass'n Inc.*, 363 So. 3d 719, 723-24 (¶15) (Miss. Ct. App. 2019) (4" drop-off along edge of neighborhood asphalt pathway); *Jones*, 187 So. 3d at 1105-06 (¶17) (crack in asphalt alleged to be 4" deep, 4" wide, and 12" long).

¶19. Federal courts applying Mississippi common law have also concluded that height differentials in sidewalks or walkways alone—including differentials greater than the one-half-inch differential here—do not constitute a dangerous condition. *See, e.g.*, *Parker v. Wal-Mart Stores Inc.*, 261 F. App'x 724, 727-28 (5th Cir. 2008) (crack in curb expansion joint 3.5" wide and 2" deep); *Chance v. Wal-Mart E. L.P.*, No. 3:14-CV-363, 2015 WL 4496442, at *2 (S.D. Miss. July 23, 2015) (pothole in asphalt parking lot approximately 1.5" to 2" deep); *Quick v. Strategic Rests. Acquisition Co.*, No. 3:12-CV-301, 2013 WL 1305583, at *2 (S.D. Miss. Mar. 28, 2013) (a 10" wide and 1.5" deep pothole in parking lot); *McCain v. Lehman Bros. Inc.*, No. 3:06-CV-327, 2008 WL 872431, at *3 (S.D. Miss. Mar. 27, 2008) ("slight height differential" between sidewalk blocks); *Mack v. Waffle House Inc.*, No. 1:06-CV-559, 2007 WL 1153116, at *1-2 (S.D. Miss. Apr. 18, 2007) (crack in sidewalk where a handicap ramp meets the asphalt parking lot measuring approximately 2" wide, 4 and 3/4" long, and 3/4" deep). Although these decisions are not binding on this Court, we find them persuasive. *See, e.g.*, *Jones*, 187 So. 3d at 1105 (¶15).

### A. Not Normally Encountered

¶20. Rodriguez, however, asserts that her case is distinguishable from these cases. She contends that the uneven sidewalk she encountered was not a condition an invitee would "normally encounter[]" because the uneven surface "is too low to be a step, but high enough to catch the toe of your foot or shoe and cause a trip and a serious injury. Further, it is also low enough where it is a hidden danger. The concrete is the same color and same texture on both sides of the elevation changes." In support of her assertions, Rodriguez cites *Green v.*

9

*Highland Health Club Inc*., No. 5:06-CV-152, 2008 WL 113855 (S.D. Miss. Jan. 9, 2008), among other Mississippi federal district court decisions, in which these courts have recognized that "a genuine issue of material fact can exist regarding how the condition was normally encountered, as well as how it was encountered by the plaintiff." *Id.* at *4; *see Tenhet v. Strategic Rest. Acquisition Co LLC*, No. 1:17-CV-143, 2017 WL 6513351, at *4 (S.D. Miss. Dec. 20, 2017); *Cook v. Payless Shoesource Inc*., No. 5:05-CV-19, 2006 WL 1328895, at *8 (S.D. Miss. May 12, 2006).

¶21.    While we agree that an alleged walkway defect *can* be a dangerous condition if it is something not "normally encountered" by an invitee, we find that these circumstances do not exist here.  The photographs in the record show that the one-half-inch height difference in the sidewalk slabs, though slight, was *not* concealed—there was no "hidden danger" as Rodriguez contends.  Nor does Diamondhead dispute how Rodriguez fell or the height differential between the two sidewalk slabs.

¶22.    The federal district court decisions Rodriguez relies upon to support her argument are nonbinding on this Court and wholly distinguishable; thus, we do not find them persuasive. In *Green*, for example, the federal district court found a material factual dispute existed "concerning the presence of a dangerous condition" based upon the parties differing contentions regarding the alleged fall.  *Green*, 2008 WL 113855, at *4.  The defendant contended that the plaintiff simply tripped and fell on an uneven sidewalk when he was not looking.  *Id.*  The plaintiff, on the other hand, testified in his deposition that the position of the business's entrance door relative to the uneven pavement prevented him from seeing the

10

alleged defect. *Id.* In the instant case, as noted, Diamondhead does not dispute the vertical differential in the sidewalk slabs or their appearance.

¶23. In *Tenhet*, the defendant and plaintiff disputed the size of an uncovered meter hole in the restaurant parking lot. *Tenhet*, 2017 WL 6513351, at *4. According to the defendant's expert, the hole was 11" wide and 5.75" deep; the plaintiff, however, testified in her deposition that the hole was actually 12" to 18" wide and 12" or more deep. *Id.* The federal district court found that the significant disparity between the measurements and the potential size of the uncovered meter hole created a disputed material fact issue whether the hole "constituted a dangerous condition under Mississippi law." *Id.*

¶24. In *Cook*, the federal district court found a material fact issue whether the alleged defect was a dangerous condition where the defendant contended that the plaintiff's fall was caused only due to a "slight rise in elevation from the parking lot to the sidewalk," but the plaintiff contended that a "washed away area" constituted "a defect in the sidewalk itself apart from the change in elevation." *Cook*, 2006 WL 1328895, at *8. No such factual disputes exist in this case.

¶25. Rodriguez also cites *Mayfield v. The Hairbender*, 903 So. 2d 733 (Miss. 2005), to support her argument that she has demonstrated a genuine issue of material fact whether the uneven sidewalk was a dangerous condition in this case. But as this Court has already recognized in *Jones*, "[t]he *Mayfield* opinion did not address the question whether the defect at issue in that case—broken pavement that 'jutted up' over steps leading to the business, *see id.* at 734 (¶3)—constituted a dangerous condition. Accordingly, *Mayfield* is not on point

11

in this case." *Jones*, 187 So. 3d at 1106 (¶18). The same analysis applies here.

¶26. We also point out that regardless of any duty owed Rodriguez as an invitee, she was "still required to use in the interest of [her] own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstance." *Stephens v. City of Gulfport*, 379 So. 3d 399, 407 (¶27) (Miss. Ct. App. 2024). Here, Rodriguez admits that she was walking with her beach bag in front of her and "was looking towards [her] car. [She] wasn't looking down at the sidewalk."

¶27. Rodriguez also complains that the concrete sidewalk slabs were the "same color and texture." But as we have detailed above, Mississippi courts have plainly held that analogous height differentials in sidewalks or walkways—including situations without contrasting color or texture between the uneven surfaces—are conditions "normally encountered" by invitees and do not constitute dangerous conditions. Indeed, "[t]he principle derived from th[e]se cases is that . . . *because* they are normally encountered by invitees[,]" the height differentials at issue "are not dangerous conditions." *Jones*, 187 So. 3d at 1106 (¶17) (emphasis added).

¶28. Lastly, Rodriguez asserts that the alleged defect in this case was "unexpected" because it was "at a very exclusive pool area . . . where people would assume and reasonably expect that . . . [an] uneven sidewalk would not be present." But we find no binding or persuasive case applying a heightened standard of care with respect to sidewalks in the common areas of a subdivision, as compared to a city street, nor does Rodriguez cite such a case. On the contrary, *Bradley* also involved a premises liability lawsuit against Diamondhead. *Bradley*, 363 So. 3d at 721 (¶¶2-4). The Bradleys sought recovery for damages Mr. Bradley suffered

12

when he fell off the edge of an asphalt walkway leading to the Diamondhead Country Club pool. *Id.* Applying the same law as we do here, we found no error in the circuit court's finding that the four-inch drop-off along the edge of the neighborhood's asphalt pathway "was not a dangerous or unreasonable hazardous condition" as a matter of law. *Id.* at 724 (¶15). As such, we also find that this argument is without merit.

### B. General Allegation that the "Uneven Sidewalk" Violates the Diamondhead "Building Code"

¶29. Separate from her negligence-per-se argument that we discuss below, Rodriguez also asserts that "the uneven sidewalk is an unreasonably dangerous condition that[, according to Cree,] violates the [Diamondhead] building code." Rodriguez contends that this general statement creates a material factual dispute whether the uneven sidewalk was a dangerous condition.

¶30. We recognize that Cree notes in both his report and his affidavit that Diamondhead "has adopted the [IBC], version 2018." But Cree then explicitly acknowledges that "[t]he IBC was developed for ground up construction, *which does not really apply to the accident site*. The sidewalk slab is considered more of a civil site item." (Emphasis added). Because even Rodriguez's expert acknowledges that the IBC "does not really apply" to the uneven sidewalk slab, in general, we are unconvinced by Rodriguez's assertion that Cree's vague reference to "the Diamondhead building code" creates a material fact issue whether the uneven sidewalk was a dangerous condition.

### II. Negligence Per Se

¶31. Rodriguez also asserts a negligence-per-se theory of liability based on the specific IBC

and ADA provisions that Cree relies on in opining that the uneven sidewalk was "an unreasonable existing safety hazard for pedestrian and ADA traffic traveling to and from the swimming pool entrance."

¶32.    "Negligence per se renders a defendant liable without proof of reasonable care when the plaintiff proves the defendant violated an applicable statute." *Dooley v. Byrd*, 64 So. 3d 951, 960 (¶33) (Miss. 2011).  A party who asserts a negligence-per-se claim, however, must demonstrate "(1) that the party belongs to the class of people the statute intends to protect, (2) that the party suffered the type injuries the statute was designed to avoid, and (3) that the offender's violation of the statute proximately caused the party's injuries." *Id.*  Because Rodriguez cannot demonstrate the first two requirements, her negligence-per-se claim fails.

¶33.    We begin our analysis with a summary of Cree's opinion relating to the swimming pool walkway and the IBC provisions he relies upon. After acknowledging that the IBC, in general, did "not really apply to the accident site," Cree then specifically addressed the route to the swimming pool in his report and affidavit.  Regarding the swimming pool entrance, in particular, Cree stated that "[IBC] section 1110, *Recreational Facilities*, subsection 4.14, Swimming pools, wading pools, hot tubs and spas *does* pertain to the accident site." (Emphasis added).  That provision reads: "Swimming pools . . . shall be accessible and be on an accessible route." IBC § 1110.4.14 (2018).  Cree explained that "an 'accessible route' is one that meets the requirements of the [ADA]."

¶34.    Continuing, Cree stated:

> Chapter 3 (Changes in Level), Section 3.03 of the Mississippi Accessible & Usable Buildings and Facilities [C]ode states that vertical elevations

14

differences between 0.25" and 0.50" must have beveled edges with a 2:1 slope. Section 3.04 states that differences in level with greater than 0.50" must be accomplished by means of a sloped surface such as a ramp [R156-57] . . . . From the onsite measurements taken at the fall site, it is evident that the sidewalk was out of code compliance.

¶35. Based on these provisions and the measurements at the fall site, Cree opined: "Therefore, it is my professional opinion, as a licensed Professional Civil Engineer, that the concrete sidewalk [at issue] . . . is outside standard construction tolerances, and is an unreasonable existing safety hazard for pedestrian and ADA traffic traveling to and from the swimming pool entrance."

¶36. Thus, Rodriguez's negligence-per-se claim is based on IBC section 1110.4.14, pertaining to accessibility to swimming pools, which in turn is based upon the ADA's "accessible route" requirements as delineated in the Mississippi Accessible & Usable Buildings and Facilities Code, as set forth above. Indeed, chapter 11 of the IBC is entitled "Accessibility." The "scope" of chapter 11 is described as follows: "The provisions of this chapter shall control the design and construction of facilities for accessibility for individuals with disabilities." IBC § 1101.1. Further, as Cree himself explained in his report and affidavit, an "accessible route" as that term is used in IBC section 1110.4.14 "is one that meets the requirements of the [ADA]."

¶37. A plain reading of these provisions shows that they are intended to benefit or protect individuals with disabilities; that is, such provisions are intended to "remedy widespread discrimination against disabled individuals . . . and to integrate them into the economic and social mainstream of American life." *PGA Tour Inc. v. Martin*, 532 U.S. 661, 674-75 (2001)

15

(internal quotation mark omitted); *see also* 42 U.S.C. § 12101 ("It is the purpose of this chapter . . . to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; [and] . . . to provide clear, strong, consistent, enforceable standards addressing discrimination against [such] individuals.").

¶38.    Rodriguez has never claimed she is disabled or offered proof that she is disabled.  She simply does not "belong[] to the class of people" that these provisions are "intend[ed] to protect."  Nor has Rodriguez demonstrated "that [she] . . . suffered the type injuries" that the provisions she relies upon were designed to avoid.  Namely, Rodriguez makes no claim that she was discriminated against or denied pool access due to the alleged defect in the sidewalk at issue here.  As such, we find that the code provisions that Rodriguez relies upon do not trigger a negligence-per-se claim.  This claim fails as a matter of law.

**CONCLUSION**

¶39.    In sum, for the reasons addressed above, we find no error in the circuit court's ruling that the approximately half-an-inch height differential between the two concrete sidewalk slabs at issue did not constitute a dangerous condition.  Thus, Rodriguez failed to meet an essential element of her premises liability claim against Diamondhead.  *See Jones*, 187 So. 3d at 1104 (¶12).  We also find that Rodriguez's negligence-per-se claim fails as a matter of law for the reasons stated.  Accordingly, we affirm the circuit court's order granting summary judgment in Diamondhead's favor.[3]

---

[3] Diamondhead also asserts, in the alternative, that the allegedly uneven sidewalk was "open and obvious[,] thus [also] barring [Rodriguez] from recovery."  Because we have affirmed the circuit court's order granting summary judgment in Diamondhead's favor for the above-stated reasons, we need not reach this alternative ground for summary judgment

16

¶40. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.**

---

urged by Diamondhead, and we decline to do so.

17