## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-00285-SCT

*ST. DOMINIC-JACKSON MEMORIAL HOSPITAL*

*v.*

*MERILYN J. MARTIN*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/01/2022 |
| TRIAL JUDGE: | HON. ADRIENNE ANNETT HOOPER-WOOTEN |
| TRIAL COURT ATTORNEYS: | YANCY B. BURNS |
| | MARCUS AMIR WILLIAMS |
| | JOHN E. WADE |
| | ALSTON F. LUDWIG |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN E. WADE |
| | M. PATRICK McDOWELL |
| | ALSTON F. LUDWIG |
| ATTORNEY FOR APPELLEE: | YANCY B. BURNS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 05/30/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.   St. Dominic-Jackson Memorial Hospital (St. Dominic) appeals a jury verdict in favor of Merilyn Martin after she fell in the emergency room parking lot on the evening of October 24, 2018.  The case must be remanded for a new trial because the trial court erroneously granted a negligence per se instruction.

## FACTS AND PROCEDURAL HISTORY

¶2.   On October 24, 2018, Merilyn Martin fell in the St. Dominic emergency room parking

lot. On February 4, 2020, Martin filed suit against St. Dominic on the theories of negligence and premises liability. On July 19, 2022, the case went to trial.

¶3. Testimony at trial showed that Martin had checked into St. Dominic on October 24, 2018, for treatment of injuries sustained in a motor vehicle accident. As Martin was leaving the hospital around 6:30 p.m., she was being helped to her car via a wheel chair pushed by Elizabeth Smith, her son's girlfriend at the time. Forrest Hall, Martin's son, was parked in the emergency room parking lot waiting to pick up Smith and Martin. Once Martin reached the car, she stood up and opened the car door into herself, requiring her to have to move around the door to get into the car. As Martin was shuffling around the door, she fell backwards and landed in a storm water drain. These are undisputed facts. A surveillance video of the parking lot captured the fall at around 6:31 p.m. Pictures of the parking lot depicting the state of the area where Martin fell were introduced.[1]

¶4. Smith testified that she met Martin and Hall at the emergency room that evening and offered to push Martin's wheelchair to the car. Smith described the parking lot as bumpy, dim and dark. Smith stated that she remembered Hall pulling the car up to move away from a pothole in the parking lot. Smith stated that she had not seen the pothole until she was at the car because it was dark and because "the car was a shadow on top of it." Smith stated that she would not have intentionally put Martin in the "indentation area" but did not see the hole until the car door was open. When they arrived at the vehicle, Martin stood up and

---

[1]Sometime after the fall, the parking lot was resurfaced. While there was much argument as to the significance of the resurfacing, these subsequent remedial measures were admissible only for impeachment; they were not admissible as proof of liability per Mississippi Rule of Evidence 407.

grabbed the handle. Smith pulled the wheelchair away and turned around to return the chair to the emergency room. Smith heard Hall yelling and turned back around to find Martin on the ground in the storm drain with her feet in the pothole. Smith stated that the hole Martin fell in was approximately five or six of her size ten shoes in diameter and three to four inches deep.[2]

¶5.      On cross-examination, Smith was asked in detail about the parking lot lighting. The surveillance video appeared to show that three sets of ambulance lights and three overhead parking lot lights were shining in the direction of the car. Smith testified that although she saw that the lights on the video appeared "blaring," it did not look like that when she was out there.

¶6.      Percy Johnson, a St. Dominic security guard, testified that he was on duty in the parking lot at the time of the fall. He was walking through the parking lot and walked past Smith and Martin getting into Hall's car. A passing vehicle had stopped him to ask for parking directions. He then heard an exclamation behind him. Johnson turned around and saw Smith helping Martin, who was on the ground near a sewage drain. Hall was out of the car near Martin saying, "ain't nothing wrong with you." Johnson went to help the patient into the wheel chair. Johnson testified that there was daylight, but the sky was turning dark, and all the lights in the parking lot were working. Johnson stated that he did not consider the state of the area to be a dangerous condition, so although Johnson had a responsibility to report any hazards in the parking lot that he saw, he had not reported the asphalt near the

---

[2]Smith originally stated the hole was three to four feet deep but later corrected the units to inches.

drain.[3]

¶7.    Martin testified that when she was at the car, she got out of the wheel chair, reached down to pull the car handle and stepped back with her right foot.  Upon stepping back, her heel went into the pothole that had broken concrete in it, and it threw her backwards into what she described as "a bigger pothole."  Martin testified that she realized she was stepping on broken concrete but did not see the pothole until she stepped in it or else she "would have never gotten close to it."  Martin stated that the car was in front of the drain but that the drain was not what caused her to fall.  Martin stated that it was difficult to see because it was dark in the parking lot.  When asked to identify exactly what portion of the pothole caused Martin to fall she stated, "I really did not see anything that caused my fall. I didn't know anything was there. But, I knew when I stepped in the pothole, I stepped in a pothole."

¶8.    On cross-examination, St. Dominic impeached Martin's testimony with prior deposition testimony.  At the deposition, Martin stated that the source of her fall "could have been a piece of broken concrete.  It could have been one of those cracks.  I can't tell you for sure because I didn't see it."  Martin clarified the discrepancy by stating that she could not see what caused the fall but that she felt her heel go down into the pothole and did not have any doubts that the pothole caused the fall.  When asked about the lighting in the parking lot, Martin stated that although the video showed lights on the St. Dominic building, they must not have been shining on the parking lot because it was dark where she was.

---

[3]Johnson also stated that he did not report Martin's fall because he believed Smith, who was wearing scrubs, was a St. Dominic nurse and would make the report.  Johnson was contacted later by Kenneth Farr, the risk and safety manager at St. Dominic, to discuss what happened, and a report was made later.

¶9.    Hall testified that he drove the car to the emergency room parking lot and backed into the closest parking spot in the lot that he could find to wait for Martin to exit the building. Hall testified that Smith motioned for him to pull the car forward to avoid a hole that he had not seen when he pulled in the lot.[4]  Hall watched Martin as she opened the car door, "took a step back and then she was gone."  Hall stated that he got out of the car and went around to the passenger's side where he found his mother on the ground near the storm drain crying in pain.[5]  Hall stated that the lights in the parking lot were on, but it was "shadowy" and dark in the lot due to the big buildings.

¶10.    Kenneth Farr, the risk and safety manager at St. Dominic at the time, testified about St. Dominic's employee training and safety inspections of the parking lot.  Farr described the area where Martin fell as "a roughed up area where the water drains."  Farr admitted that the area in the emergency room parking lot has generally looked to be in that condition for years and that he did not view it as a hazardous condition.  Farr stated that when Martin was being discharged from St. Dominic for the second time, he was notified that she wanted to speak with someone.  He went to her room and was told for the first time that she had fallen in the parking lot.  He checked with security, talked with Johnson, and found the surveillance video of the fall.  He then went to the parking lot and inspected the area.

¶11.    Both parties presented expert testimony.  Martin presented expert testimony through

---

[4]Smith was asked if she remembered telling Hall to pull the car forward because she saw the indentation, and she stated that she did not remember for sure but that it was possible.

[5]Hall indicated and initialed the spot on a photograph where he found Martin on the ground.

Mark Williams, an architect, that the area near the storm drain was dangerous and violated the standard of care for property maintenance. Further, Williams stated that St. Dominic's failure to maintain its parking lot "created the dangerous condition that caused [Martin] to fall and be injured." St. Dominic presented expert testimony from John McKee, a civil engineer, that the area where Martin fell was not a pothole and showed only "normal wear and tear for a pavement in this area."

¶12. The jury returned a verdict in favor of Martin, and she was awarded $339,247.42.[6] St. Dominic timely filed a motion for judgment not withstanding the verdict, or in the alternative, a new trial. On February 16, 2023, the trial judge denied St. Dominic's motion, and on March 14, 2023, St. Dominic appealed.

## ISSUES PRESENTED

¶13. On appeal, St. Dominic argues the following two issues:

I.  Whether Martin failed to present sufficient evidence at trial that her fall was caused by an unreasonably dangerous condition.

II.  Whether the trial court erred by granting Martin's negligence per se jury instruction.

## ANALYSIS

**I.  Whether Martin failed to present sufficient evidence at trial that her fall was caused by an unreasonably dangerous condition.**

¶14. "A motion for JNOV tests the legal sufficiency of the evidence supporting the verdict, not the weight of the evidence." *Corley v. Evans*, 835 So. 2d 30, 36 (Miss. 2003) (citing

---

[6]The jury actually awarded Martin $350,000, but this amount was reduced due to a pre-verdict stipulation between the parties.

*Tharp v. Bunge Corp.*, 641 So. 2d 20, 23 (Miss. 1994)). This Court reviews the trial court's decision to grant or deny a motion for JNOV de novo. *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 64 (Miss. 2004) (citing *N. Elec. Co. v. Phillips*, 660 So. 2d 1278, 1281 (Miss. 1995)). "In order to rule on a motion for JNOV, the trial court is required to consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that reasonably may be drawn therefrom." *Id.* at 63 (citing *Corley*, 835 So. 2d at 36). "If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render." *Id.* (internal quotation marks omitted) (quoting *Corley*, 835 So. 2d at 37). When the evidence in this case is viewed in the light most favorable to Martin, the jury verdict is supported by sufficient evidence.

¶15.    In order to prove her premises liability case, Martin had to show that St. Dominic owed her a duty, that St. Dominic breached that duty and that St. Dominic's breach of its duty caused Martin's injuries. *Double Quick, Inc. v. Moore*, 73 So. 3d 1162, 1166 (Miss. 2011) (citing *Crain v. Cleveland Lodge 1532, Order of Moose, Inc.*, 641 So. 2d 1186, 1189 (Miss. 1994)). The parties agree that at all times Martin was an invitee. "An invitee is a person who enters the premises of another in response to an 'express or implied invitation of the owner or occupant for their mutual advantage.'" *Id.* (quoting *Leffler v. Sharp*, 891 So. 2d 152, 156 (Miss. 2004)). St. Dominic "is not an insurer of the invitee's safety, but does owe to an invitee the duty 'to keep the premises reasonably safe, *and* when not reasonably safe, to warn only where there is hidden danger or peril that is not in plain and open view.'" *Corley*, 835

So. 2d. at 37 (quoting *Caruso v. Picayune Pizza Hut, Inc.*, 598 So. 2d 770, 773 (Miss. 1992)).

¶16. As a part of Martin's burden, she had to show that some negligent act of St. Dominic caused her injury; or that St. Dominic had actual knowledge of a dangerous condition and failed to warn her or that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to St. Dominic. *Downs v. Choo*, 656 So. 2d 84, 86 (Miss. 1995) (citing *Moore v. Winn-Dixie Stores, Inc.*, 252 Miss. 693, 173 So. 2d 603 (1965)). The parties agree that the photographs of the parking lot accurately depict the status of the asphalt at the time of the fall. St. Dominic conceded that it had actual knowledge of the state of the asphalt but disputes that the asphalt presented a dangerous condition.

¶17. First, St. Dominic contends that Martin failed to prove what exactly caused her to fall. St. Dominic relies on Martin's deposition testimony in which Martin stated that she did not see the pothole. St. Dominic further points out that no one in the parking lot actually saw the fall. Smith was turned around, Hall's view was obstructed by the car and Johnson had his back turned talking to another person. St. Dominic also relies on a statement given by a nurse who helped Martin when she returned to the emergency room after the fall. The nurse stated, "Her friend pushed her out to the car. Stepped on something(?) that caused her to fall backward into a 'pot hole.' Says she was concentrating on avoiding one pot hole." Another note, made by the St. Dominic director of risk management, documented Martin's statement as "Pot hole was next to car. While concentrating on one pot hole fell backwards in to pot hole. . . . Thinks stepped on something." Martin's medical records stated that after being

8

discharged as she was attempting "to get into the vehicle she slipped and fell." St. Dominic argues that this evidence shows there is confusion as to what caused Martin to fall.

¶18. This argument is without merit. Martin stated that she did not see the pothole until she stepped in it. Her testimony was clear that she felt the unlevel concrete when her heel entered the hole. Further, Smith, Hall and Johnson were consistent in their testimony that Martin was found on the storm drain. Smith and Hall both marked on a photograph where Martin's feet were when she was lying on the ground, and both were consistent that she had fallen on the hole and landed on the storm drain. Accordingly, the evidence is not overwhelmingly in favor of St. Dominic's argument that the cause of Martin's fall was unknown. Instead, taking the evidence in the light most favorable to Martin, the nonmoving party, the evidence is sufficient to show that a reasonable jury could find that the pothole caused Martin to fall. *Corley*, 835 So. 2d at 36.

¶19. St. Dominic contends that if this Court finds that Martin has sufficiently shown that the hole caused Martin to fall, then Martin further failed to show that the hole was an unreasonably dangerous condition as a matter of law. St. Dominic relies on a Court of Appeals case, *Jones v. Wal-Mart Stores East, LP*, 187 So. 3d 1100, 1104 (Miss. Ct. App. 2016). We agree.

¶20. In *Jones*, Barbara Jones tripped, fell forward, and landed on her right knee in the parking lot of the Wal-Mart Super Center on Highway 49 in Gulfport. *Id.* at 1102. Jones did not see a pothole, and after falling, "she got up and 'hobbled' over to a security guard" who helped her call Jerry Bush, her fiancé. *Id.* Bush, who was waiting in the car in the

9

parking lot, alleged that from the car he "witnessed Jones 'step in a hole and suddenly stumble in the crosswalk in front of the store'" *Id.* "Jones testified that she did not know what caused her to trip until Bush looked over the area and told her that she had fallen in a pothole." *Id.* The trial court granted Wal-Mart's motion for summary judgment after finding that Jones did not encounter a dangerous condition. *Id.* at 1103. Jones appealed, and the case was assigned to the Court of Appeals.

¶21. The Court of Appeals stated that "Mississippi has long recognized that normally encountered dangers such as curves, sidewalks, and steps are not hazardous conditions. Often such pathways contain cracks and changes in elevation; and, as such, they do not become hazardous conditions simply because they contain minor imperfections or defects." *Id.* at 1104 (internal quotation marks omitted) (quoting ***Knight v. Picayune Tire Servs., Inc.***, 78 So. 3d 356, 359 (Miss. Ct. App. 2011)). Jones argued that what she fell on was not a "crack but a 'crevasse four inches deep and four inches wide and twelve inches long.'" *Id.* at 1106. The Court of Appeals reasoned that the "principle derived" from Mississippi case law is that "cracks are not dangerous conditions because they are normally encountered by invitees, not because they are of any particular size." *Id.* at 1106 (citing ***Knight***, 78 So. 3d at 359). Summary judgment in favor of Wal-Mart was affirmed. *Id.*

¶22. St. Dominic argues that, just as in ***Jones***, the pavement in the emergency room parking lot was in "a condition invitees normally expect to encounter on a business' premises and therefore is not an unreasonably dangerous condition under Mississippi law." We agree. The photographs show a storm water drain with the asphalt sloped toward the drain. Next

to the drain is an area that is obviously a large depression, and all around the drain are cracks. Smith testified that the depression was about three to four inches deep. Martin's expert witness said that based on the standard size of storm water drains and the testimony from Smith, he could estimate the dimensions of the slope around the drain and found that it violated the standard for "safe planar walking surfaces" by greater than six times the allowance.

¶23. The evidence is overwhelming against finding that the pothole alone was a dangerous condition. The logic of the Court of Appeals in *Jones* is persuasive here and does not support Martin's contention that "a reasonable jury could find that the pothole and its state of deterioration and disrepair was an unreasonably dangerous condition." Further, this Court's case law does not support such a finding. *See City of Greenville v. Laury*, 172 Miss. 118, 159 So. 121, 122 (1935) (finding the city was not liable for the injury to a woman who fell when her heel went into a depression in the street that was somewhere between a half inch to three inches wide and eighteen inches to two feet deep). These are normal conditions that one should reasonably contemplate encountering in a parking lot.

¶24. Martin, however, does not singularly rely on the status of the asphalt to support her allegations that the parking lot presented a dangerous condition. Martin's claim is that the depression in the pavement combined with the inadequate lighting in the parking lot created an unreasonably dangerous condition. Martin and the trial court relied on a case from the United States Court of Appeals for the Fifth Circuit, *Woten v. Wal-Mart Stores, Inc.*, 424 Fed. App'x 368 (5th Cir. 2011), to support that the combination of the lighting and the

condition of the asphalt presented a triable issue of fact.

¶25.   In *Woten*, Helen Woten fell in a parking garage owned by American National Insurance Company (ANICO) when "she caught her toe on a curb inside of the garage and fell, sustaining an injury to her elbow[.]" *Id.* at 369. A security guard created a report of the fall and noted that Woten complained that the lighting in the garage was dark; he also described the lighting condition as "dark" but noted that the lights were on inside the garage. *Id.* Woten filed suit against ANICO and contended that ANICO failed to "replace a broken [exterior] light" and that there was "inadequate interior garage lighting." *Id.* at 371. The district court granted ANICO's motion for summary judgment, and Woten appealed. *Id.*

¶26.   On appeal, the Fifth Circuit found that the district court erred by granting summary judgment on the issue of whether the curb itself presented an unreasonably dangerous condition. *Id.* at 370. The court found that it was the inadequacy of the interior lighting in addition to the curb that created a genuine issue of material fact as to whether there was an unreasonably dangerous condition. *Id.* at 370. The court stated that "[i]nsufficient lighting can constitute an unreasonably dangerous condition." *Id.* (citing *Lloyd G. Oliphant & Sons Paint Co., Inc. v. Logan*, 12 So. 3d 614, 620 (Miss. Ct. App. 2009); *Melton v. Greyhound Corp.*, 354 F.2d 970 (5th Cir. 1965)). Woten's claim that there was inadequate interior lighting was supported by summary judgment evidence such as the security guard's description in his report and Woten's testimony that "it was 'dim' or 'dark' in the garage." *Id.* The court reasoned that "what is necessary 'for the premises to be reasonably safe is a question for the jurors'" and reversed the grant of summary judgment. *Id.* (quoting *Maddox*

*v. Townsend & Sons, Inc.*, 639 F.3d 214, 221 (5th Cir. 2011))

¶27.   St. Dominic argues that *Woten* is distinguishable because there is a dispute as to what caused Martin to fall and there is video evidence of the lighting at the time of the fall, neither of which was mentioned by the Fifth Circuit in *Woten*.  St. Dominic contends that any argument of inadequate lighting is directly contradicted by the video footage of the fall and that this Court must adopt the version of events depicted in the video.  *Thomas v. Boyd Biloxi LLC*, 360 So. 3d 204, 211 (Miss. 2023) ("[T]he courts should view the story as depicted by the videotape, *when one party's version is blatantly contradicted*, for the purpose of ruling on a summary judgment motion."  (quoting *Duckworth v. Warren*, 10 So. 3d 433, 438 (Miss. 2009))).  St. Dominic states that "the undisputed video evidence did not permit any conclusion other than that the parking lot lighting was sufficient to see the area where Ms. Martin fell."  St. Dominic relies on *Thomas*; Martin relies on *Thomas* also, although for an entirely different reason.

¶28.   In *Thomas*, a woman fell walking down the steps of a pool deck at the IP Casino Resort Spa in Biloxi.  Thomas filed suit against IP claiming that it was negligent in maintaining the pool area.  *Id.*  The case was dismissed on summary judgment for failure to present a genuine issue of material fact.  *Id.* at 209.  The Court of Appeals had found that eyewitness testimony was contradictory to the surveillance video footage, which in its opinion, did "not show puddles or pools of water at the base of the stairs" where Thomas fell.  *Id.* at 211 (citing *Thomas v. Boyd Biloxi, LLC*, 364 So. 3d 937, 946-47 (Miss. Ct. App. 2022), *rev'd*, 360 So. 3d 204).  Reversing both the judgments of the trial court and the Court

13

of Appeals, this Court found that whether water was on the deck was not "blatantly contradicted by the record, so that no reasonable jury could believe it[.]" *Id.* at 211, 215 (alteration in original) (internal quotation marks omitted) (quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)). The video showed Thomas lying on the pool deck surrounded by a discolored area, and the majority of this Court found that "[a] reasonable jury could find that the discolored area is water," which was supported by the deposition testimony of the witnesses. *Id.* This Court stated that the Court of Appeals erred by discounting the deposition testimony rather than "viewing it in the light most favorable to Thomas." *Id.*

¶29. The video before this Court shows an aerial view of the emergency room parking lot. The camera appears to be attached high up on a building or pole with the camera lens focused on the emergency room entrance. Three ambulances are backed into parking spots near the emergency room door and their headlights appear as white orbs on the video. Hall's car is backed into a parking spot perpendicular to the doors and the ambulances. His headlights appear as bright orbs shining towards the camera. There are three bright yellow spots of light, which were shown to be the parking lot lights, attached to a building directly across from the camera and next to the emergency room door. One light appears directly above where Hall's car is parked. Martin and Smith are seen exiting the emergency room, but their image is blurry. St. Dominic, in its brief, describes the image as "Martin can be seen entering her son's car directly under three bright lights; an ambulance's lights are shining directly at Mr. Hall's car; there is still light in the evening sky; and there are no shadows in her path."

14

St. Dominic notes, however, that there is a "darker area directly adjacent to Mr. Hall's car" that is the storm water drain. The drain can be seen from the video as a dark shadowed circular area near the car. Martin reaches the car, and another car pulls into the lot blocking the camera's view of the fall.

¶30. Although *Thomas* involved a different procedural posture, this Court finds its reasoning in *Thomas* applicable to these issues. Just as in *Thomas*, it would be error to disregard the testimony of the witnesses in light of the images in the video. *Id.* Smith and Martin testified that although the lights in the parking lot were on and the ambulance vehicles were shining their headlights behind them, the area where they were getting into the car was dark. Smith described the parking lot as dim, dark and there were shadows from the car. Martin described the parking lot as dark, making the hole difficult to see. Hall testified that the parking lot was dark and shadowy from the buildings.

¶31. We find the surveillance video is not directly contradictory to the witness's testimony. Taking the evidence in the light most favorable to Martin, and giving Martin the "benefit of all favorable inferences that reasonably may be drawn therefrom," the video does not contradict Martin's story. *Wilson*, 883 So. 2d at 63 (citing *Corley*, 835 So. 2d at 36). This Court only has before it one angle of the parking lot viewed from the surveillance camera. Giving Martin all favorable inferences, a reasonable jury could find that the darkened area near the car containing the storm drain and pothole is consistent with Martin's story that the pothole was concealed by darkness.

¶32. On the issue of whether the lighting in the parking lot was adequate to satisfy St.

Dominic's duty of care to Martin, this Court finds very little instructive case law. It appears that this Court has not defined a specific duty of a landowner to an invitee for sufficient lighting.[7] Ohio case law finds that "the owner of a parking lot has no obligation to light it" and a Michigan Court of Appeals has stated that "it cannot be said that the darkness of nighttime was a special aspect posing an unreasonably dangerous risk." *Meyer v. City of Dayton*, 74 N.E.3d 921, 929-30 (Ohio Ct. App. 2016) (citing *Jeswald v. Hutt*, 239 N.E.2d 37 (Ohio 1968)); *Brooks v. Burger King Corp.*, No. 252576, 2005 WL 1489488, at *3 (Mich. Ct. App. June 23, 2005). These cases from Ohio and Michigan are persuasive because they align with the case law in Mississippi that "a property owner is the not insurer of an invitee's safety." *Moore*, 73 So. 3d at 1166.

¶33. St. Dominic only had to warn Martin of "dangerous conditions that are not readily apparent." *Thomas*, 360 So. 3d at 213 (internal quotation mark omitted) (quoting *Clinton Healthcare, LLC v. Atkinson*, 294 So. 3d 66, 70 (Miss. 2019)). Further, invitees should expect to encounter darkness and dim lighting when they are outside at night. *See Butler v. TriHealth, Inc.*, 203 N.E.3d 751, 757 (Ohio Ct. App. 2022). Additionally, Martin does not present proof of what adequate lighting was required.

¶34. Martin does, however, provide expert testimony that the fall occurred right before the

---

[7]This Court has, however, discussed the duty a landowner owes to a licencee or trespasser for lighting their property. *See Marlon Inv. Co. v. Conner*, 246 Miss. 343, 149 So. 2d 312, 318 (1963); *Adams ex rel. Adams v. Fred's Dollar Store of Batesville*, 497 So. 2d 1097, 1102 (1987).

16

end of civil twilight.[8]  Her expert stated that "[p]eople in a hospital Emergency Room aren't expecting to step in something that would throw their balance off; particularly, at night. They are not reasonably looking at their feet."  He further opined that St. Dominic was negligent in failing to place a warning in or around the hole such as paint or a cone because when "the material, the texture, the color of the material, are, basically, all the same color and it's in the dark, at night; there's really nothing to give you a visual cue that there's a hazard."

¶35.  This Court has recognized that inadequate lighting and visually similar materials can create unreasonably dangerous conditions.  *Colson v. Sims*, 254 Miss. 99, 180 So. 2d 327, 328 (1965).  In *Colson*, M.P. Colson filed suit against the owners of a Jitney Jungle grocery store in Columbia after falling in an alleyway that was frequently traversed by customers entering the meat department.  *Id.*  Colson caught his right foot on platform scales that were jutting out into the passageway "about two feet further" than usual.  *Id.* at 328.  The Court described the alley as "somewhat dark" and the lighting equipment was turned off.  *Id.*  The platform scales were about eight inches in height and were sitting on a concrete floor that "blended" with the color of the scales.  *Id.*  The trial court granted a directed verdict in favor of Jitney Jungle, and Colson appealed.  *Id.* at 327.  On appeal this Court reversed and remanded the case, finding that

> the jury could find that a person exercising reasonable care for his own safety would probably not see the scales in the passageway since the platform arose only eight inches off the floor, was substantially the same color as the floor, and there was no lighting in the passageway except what came from the

---

[8]Williams stated that civil twilight is the "period between sunset and when the sun reaches a certain number of degrees below the horizon."  When civil twilight ends is when it becomes dark and stays dark all night.

17

outside through the screen door, a distance of approximately fifteen feet away, and that defendants failed to use reasonable care to keep the aisle in reasonably safe condition for use by their business invitees.

*Id.*

¶36. Martin argues that based on ***Colson*** and ***Woten***, the testimony from the witnesses and her expert's testimony, sufficient evidence supported the jury's verdict. This Court agrees. Whether the lighting in St. Dominic's parking lot was adequate is a question for the jury. *See* ***City of Laurel v. Hutto***, 220 Miss. 253, 261, 70 So. 2d 605 (Miss. 1954) (finding that a question of highly disputed facts is for the jury to decide). This Court does not adopt a new rule of law to define a standard for a landowner's duty to an invitee to adequately light an exterior parking lot. It is not necessary in this case to resolve these issues on appeal. Importantly, the parties do not request this Court to make such a finding.

¶37. For this Court to render a judgment in favor of St. Dominic the facts must point overwhelmingly in favor of St. Dominic such that no reasonable juror could have found for Martin. ***Wilson***, 883 So. 2d 64 (citing ***Corley***, 835 So. 2d at 36). Further, this Court is required to view the evidence in the light most favorable to Martin, giving her the benefit of all favorable inferences. *Id.* Based on the evidence, a reasonable jury could find for Martin. The outcome of this case remains a decision for the fact finding jury.

**II.    Whether the trial court erred by granting Martin's negligence per se jury instruction.**

¶38. "Jury instructions are reviewed for an abuse of discretion." ***Davis v. Davis***, 360 So. 3d 196, 202 (citing ***Watkins v. State***, 101 So. 3d 628, 633 (Miss. 2012)). "This Court will reverse a trial judge's denial of a request for a new trial only when such denial amounts to

18

an abuse of that judge's discretion." ***Bobby Kitchens, Inc v. Miss. Ins. Guar. Ass'n***, 560 So. 2d 129, 132 (Miss. 1989) (citing ***Maxwell v. Ill. Cent. Gulf R.R.***, 513 So. 2d 901, 908 (Miss. 1987)). A new trial may be granted when the jury has been confused by a faulty jury instruction. ***Johnson & Johnson, Inc. v. Fortenberry***, 234 So. 3d 381, 399 (Miss. 2017) (citing ***Poole ex rel. Wrongful Death Beneficiaries of Poole v. Avara***, 908 So. 2d 716, 726-27 (Miss. 2005)). If, however, "the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." ***Harden v. State***, 59 So. 3d 594, 608 (Miss. 2011) (internal quotation mark omitted) (quoting ***Montana v. State***, 822 So. 2d 954, 958 (Miss. 2002)). St. Dominic argues, in the alternative, that if this Court does not vacate and render in its favor then it should grant a new trial because it was error for the trial court to grant a negligence per se instruction.

¶39. Martin requested and was granted, over St. Dominic's objection, the following jury instruction:

> Mississippi law provides that a property owner's violations of municipal codes, such as the International Property Maintenance Code adopted by the City of Jackson, constitute negligence as a matter of law if the Plaintiff prove [sic] the following: (1) that she was a member of the class sought to be protected under the provision of the code; (2) that her injuries were of a type sought to be avoided; and (3) that violation of the provision of the code proximately caused her injuries.

> The relevant code provision requires the Defendant keep its walkways and similar areas in a proper statement [sic] of repair, and maintained free of hazardous conditions. Further, the code provides that walking surfaces that have deteriorated to a condition that presents a hazard to pedestrians must be repaired to eliminate the hazard and thus reduce the potential for accidents and injuries.

> As such, if you find that the Defendant failed to keep its walkways and

19

similar areas in a proper state of repair and maintained free of hazardous conditions as required by the code, and such failure was a proximate cause or proximate contributing cause to Ms. Martin's fall and subsequent injuries, then you should return a verdict for Plaintiff, Merilyn Martin.

We find it was error to grant this instruction.

¶40.    "Mississippi recognizes the doctrine of negligence per se, which essentially provides that breach of a statute or ordinance may render the offender liable in tort without proof of lack of due care." **Simpson v. Boyd**, 880 So. 2d 1047, 1052 (Miss. 2004) (quoting **Palmer v. Anderson Infirmary Benevolent Ass'n**, 656 So. 2d 790, 796 (Miss. 1995)).  "When a statute is violated, the injured party is entitled to an instruction that the party violating is guilty of negligence, and if that negligence proximately caused or contributed to the injury, then the injured party is entitled to recover." **Thomas v. McDonald**, 667 So. 2d 594, 596 (Miss. 1995) (quoting **Bryant v. Alpha Ent. Corp.**, 508 So. 2d 1094, 1096 (Miss. 1987)).

¶41.    For example, in **McDonald**, this Court found that the trial court erred by failing to grant an instruction that directed the jury that the defendant, William McDonald, had violated Mississippi Code Section 63-7-71 by failing to "place reflectors or other signals in an operating condition upon the highway" when his truck, which "had no lights and was not equipped with reflectors or other warning devices[,]" stalled out on Highway 528, blocking an entire lane of traffic. **Id.** at 597.  The instruction further stated that if the jury believed that such violation of the relevant code section proximately caused the collision and damages, then a verdict must be returned against the defendant. **Id.**  This was a proper negligence per se instruction. **Id.** at 597.

¶42.    Martin's instruction is not like the instruction in **McDonald**.  Here, there is a highly

contested factual dispute as to whether the International Property Maintenance Code section applied to the area of the parking lot where Martin fell. By contract, in *McDonald*, the application of the statute was undeniable. *Id.* The Court noted that regardless of how the statute could be interpreted, the defendant could not have complied with the statute because it was "uncontroverted that the truck had no lights and was not equipped with reflectors or other warning devices." *Id.*

¶43. Section 302.3 of the 2018 International Property Maintenance Code, the disputed code section in this case, states: "Sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair, and maintained free of hazardous conditions." The parties disagreement was whether the area where Martin fell was a walkway. Martin's expert stated that the area where Martin was standing was a reasonably foreseeable pedestrian walkway. St. Dominic's expert stated that he did not consider the area a walkway.

¶44. Martin argues that because the negligence per se instruction was not peremptory, meaning it did not remove "the fact issue from the jury" as to whether St. Dominic was negligent under the code section, the instruction was proper. Martin further argues that the instruction was proper when considered in light of the other instructions. These arguments miss the point.

¶45. As this Court already discussed, the pothole by itself is not a dangerous condition under Mississippi law. It is only when the pothole is combined with the alleged inadequate lighting that a question of St. Dominic's negligence arises. No other instruction could have

made this instruction proper because the negligence per se instruction allowed the jury to find in favor of Martin based on the status of the asphalt alone. This makes the instruction improper and confusing.

¶46. St. Dominic avers that while the ordinance may be evidence of negligence, it did not create a separate cause of action for negligence per se. *See Howard v. Est. of Harper ex rel. Harper*, 947 So. 2d 854, 860 (Miss. 2006) ("Minimum Standards, which serve as internal licensing regulations, do not create a separate cause of action nor establish a duty of care[.]"); *Moore ex rel. Moore v. Mem'l Hosp. of Gulfport*, 825 So. 2d 658, 665 (Miss. 2002) ("A violation of one of its internal regulations, which may serve as evidence of negligence, does not, however, create a separate cause of action."). This Court agrees. Martin's introduction of the code section goes to St. Dominic's standard of care, not a negligence per se claim.

¶47. Additionally, it is undisputed by the parties that Martin failed to adequately plead negligence per se. Martin, however, contends that the issue of negligence per se was tried by implied consent. It is not necessary for this Court to determine whether the issue was tried by implied consent. Under the disputed property maintenance code section, St. Dominic could not be found negligent as a matter of law for the presence of the depression in the asphalt alone. Regardless of the pleading issue, this was an improper instruction that merits a new trial.

¶48. St. Dominic presents further arguments in its brief as to why certain specific language in the instruction is confusing, misleading and unfairly prejudicial. For the reasons already discussed, the instruction merits a new trial. Further analysis of the instruction's verbiage

is unnecessary.

## CONCLUSION

¶49.    Because the trial court granted Martin an improper negligence per se instruction, this

Court reverses the trial court's judgment and remands the case to the trial court for a new

trial.[9]

¶50.    **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**

---

[9]Martin filed a motion to strike requesting that this Court strike portions of St. Dominic's reply brief that alleged that images submitted by Martin had been manipulated. The motion to strike further requests that this Court strike portions of St. Dominic's record excerpts that Martin claims are "considerably brighter" than the images in the record. Martin's motion to strike is denied.